IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BRIAN CHRISTOPHER MACKES,
ADRIAN CHÁVEZ, and
THE NATIONAL FEDERATION OF THE BLIND OF COLORADO,

     Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

---

## COMPLAINT

---

     Brian Christopher Mackes, Adrian Chávez, and the National Federation of the Blind of Colorado, by and through counsel, hereby file this Complaint against the Colorado Department of Corrections.

## INTRODUCTION

1.     Brian Christopher Mackes and Adrian Chávez (the "Blind Plaintiffs") are blind men incarcerated in the custody of the Colorado Department of Corrections ("CDOC").

2.     Because the Blind Plaintiffs are blind, CDOC has denied them equal access to vital services, programs, and activities for which they are qualified and which are available to sighted inmates in the custody of CDOC.

3.     CDOC has refused to reasonably modify their policies, procedures, and practices to accommodate the Blind Plaintiffs; has refused to provide auxiliary aids and services needed

for the Blind Plaintiffs to participate in CDOC services, programs, and activities; has provided them inadequate accommodations and auxiliary aids and services; and has otherwise discriminated against them, with the result that the Blind Plaintiffs have been and continue to be excluded from CDOC services, programs, and/or activities, including education, work assignments, mail, law library, recreation, information (including but not limited to policies, procedures, postings, regulations, and forms), and events.

4.      The National Federation of the Blind of Colorado ("NFB-CO") brings claims in its representative capacity on behalf of Mr. Mackes, Mr. Chávez, and other members who are, or may be, incarcerated in the custody of CDOC.

**JURISDICTION AND VENUE**

5.      This action arises under the laws of the United States. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all of the events giving rise to the claims occurred in the District of Colorado.

**PARTIES**

7.      Plaintiff Brian Christopher Mackes is currently and at all times relevant to this suit has been a prisoner in the custody of the CDOC.

8.      Mr. Mackes is currently housed at the Colorado Territorial Correctional Facility ("Territorial" or "CTCF").

9.      During his confinement in the custody of CDOC, he has also been housed at Sterling Correctional Facility ("Sterling" or "SCF") and Fremont Correctional Facility ("Fremont" or "FCF").

10.     Mr. Mackes has one or more impairments that substantially limit his major life activity of seeing.

11.     Mr. Mackes has a disability as that term is used in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and section 504 of the Rehabilitation Act ("Section 504), 29 U.S.C. § 705(9)(B) (incorporating the definition in 42 U.S.C. § 12102 into, among others, 29 U.S.C. § 794).

12.     Plaintiff Adrian Chávez is currently and at all times relevant to this suit has been a prisoner in the custody of the Colorado Department of Corrections.

13.     Mr. Chávez is currently housed at FCF.

14.     Mr. Chávez has one or more impairments that substantially limit his major life activity of seeing.

15.     Mr. Chávez has a disability as that term is used in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and section 504 of the Rehabilitation Act ("Section 504), 29 U.S.C. § 705(9)(B) (incorporating the definition in 42 U.S.C. § 12102 into, among others, 29 U.S.C. § 794).

16.     Mr. Chávez is able to write using special blank paper with raised lines by feeling along each line and attempting to place the words in a legible order and location. This process is very time-consuming and laborious, and does not always result in legible text. Mr. Mackes has been unable to use this process, and is otherwise unable to write using a pen or pencil and paper.

17.     Plaintiff NFB-CO is a nonprofit membership organization incorporated in Colorado.

18.     NFB-CO is made up of blind people of all ages and their families and friends. Its members and leaders provide advocacy and support to blind and visually impaired Coloradans across the state. NFB-CO works together to promote full participation and integration of blind people in all areas of life, and serves as an advocate for change when equal access and treatment of the blind is denied.

19.     Mr. Mackes and Mr. Chávez are members of the NFB-CO.

20.     Defendant Colorado Department of Corrections is a department of the State of Colorado. CDOC has custody of the Blind Plaintiffs.

21.     CDOC receives federal financial assistance as that term is used in 29 U.S.C. § 794.

## FACTS

### A.  Lack of Access to Written Materials

22.     Sighted prisoners in the custody of the CDOC receive information from the CDOC in writing that is not available in an accessible format. As used in this Complaint, "accessible format" means an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context; the term, as used herein, does not include having printed material read out loud in real time.

23.     CDOC makes orientation materials available to prisoners in writing.

24.     CDOC allows prisoners to keep copies of orientation materials in their cells.

25.     CDOC does not make orientation materials available in an accessible format.

26.     CDOC makes facility handbooks available to prisoners in writing.

27.     CDOC allows prisoners to keep copies of facility handbooks in their cells.

28.     CDOC does not make facility handbooks available in an accessible format.

29.     CDOC makes its Administrative Regulations available to prisoners in writing.

30.     CDOC allows prisoners to keep copies of Administrative Regulations in their cells.

31.     CDOC does not make its Administrative Regulations available in an accessible format.

32.     CDOC makes its Implementation/Adjustments available to prisoners in writing.

33.     CDOC allows prisoners to keep copies of Implementation/Adjustments in their cells.

34.     CDOC does not make its Implementation/Adjustments available in an accessible format.

35.     CDOC makes Post Orders available to prisoners in writing.

36.     CDOC allows prisoners to keep copies of Post Orders in their cells.

37.     CDOC does not make Post Orders available in an accessible format.

38.     CDOC makes the menu of food available at mealtimes available in writing.

39.     CDOC does not make the menu of food available at mealtimes available in an accessible format.

40.     CDOC communicates with prisoners in writing through, among other documents, memoranda, directives, facility publications, canteen lists, menus, and posting written information in areas where prisoners have access.

41.     CDOC does not make memoranda, directives, facility publications, menus, canteen lists, or posted information available in an accessible format.

42.     CDOC provides information to prisoners using the "titler" system on their televisions.

43.     The titler system shows written messages concerning notices, facility events, and other information through printed text broadcast on prisoners' television sets.

44.     Messages broadcast on the titler system are not broadcast out loud.

45.     In order for a prisoner to read a message broadcast on the titler system, they must be able to see the message.

46.     CDOC does not make messages broadcast on the titler system available in an accessible format.

47.     Mr. Mackes does not have independent access to orientation materials, facility handbooks, Administrative Regulations, Implementation/Adjustments, Post Orders, memoranda, directives, facility publications, menus, canteen lists, the titler system, or written information posted in areas where prisoners have access on an effective and equal basis to prisoners without disabilities.

48.     Mr. Chávez does not have independent access to orientation materials, facility handbooks, Administrative Regulations, Implementation/Adjustments, Post Orders, memoranda, directives, facility publications, menus, canteen lists, the titler system, or written information posted in areas where prisoners have access on an effective and equal basis to prisoners without disabilities.

49.     CDOC's grievance program requires prisoners to fill out a printed form in writing

50.     CDOC response to prisoners' grievances in writing.

51.     There is no way for a blind prisoner to independently or privately fill in and submit a grievance form.

52.     There is no way for a blind prisoner to independently or privately read CDOC's responses to their grievances.

53.     Mr. Mackes is unable to independently or privately fill in and submit a grievance form.

54.     Mr. Chávez is unable to independently or privately fill in and submit a grievance form.

55.     Mr. Mackes is unable to independently or privately read CDOC's responses to his grievances.

56.     Mr. Chávez is unable to independently or privately read CDOC's responses to his grievances.

57.     Medical "kites" are written requests for an appointment with a health care professional to address a medical concern.

58.     Submitting a medical kite is how prisoners are expected to request an appointment with a health care professional to address a medical concern.

59.     Mr. Mackes is unable to independently or privately write medical kites.

60.     Mr. Chávez submits medical kites that he writes on raised-line paper rather than on the CDOC's kite form.

61.     At times, Mr. Chávez's kites have been accepted; on other occasions, his kites have been rejected because they are not on the official kite form.

62.     Prisoners are limited in their ability to place outgoing phone calls to individuals on their Colorado Inmate Phone System or "CIPS" list. Administrative Regulation ("AR") 850-12 ¶ IV.B.

63.     Prisoners submit written lists of names and phone numbers for approval to be listed in their CIPS list. *Id.* ¶ IV.B.1

64.     There is no accessible way for blind prisoners, including the Blind Plaintiffs, to independently or privately submit names and phone numbers for inclusion on their CIPS list.

65.     In the absence of accessible versions of the materials and programs described above, CDOC assigns blind prisoners, including the Blind Plaintiffs, "Offender Care Aides" or "OCAs" to read and write for them.

66.     OCAs are also tasked with guiding blind prisoners, including the Blind Plaintiffs, from place to place within their facility.

67.     OCAs are other prisoners in CDOC custody.

68.     The need to rely on OCAs for reading and writing compromises the security and privacy of blind prisoners including the Blind Plaintiffs.

69.     Relying on OCAs puts blind prisoners including the Blind Plaintiffs at the mercy of the OCA's literacy skills, ethical principles, work ethic, and self interest, and leaves them uninformed concerning facility events and policies.

70.     Mr. Mackes is unable to independently or privately read and write his own mail.

71.     Mr. Chávez is unable to independently or privately read his own mail.

72.     An OCA reads all of the Blind Plaintiffs' incoming mail, including personal and legal mail, which gives the OCA access to private information about both the Blind Plaintiffs and

their family members including, for example, their names, genders, ages, and addresses, as well as privileged discussions with their criminal and civil attorneys.

73.     An OCA also writes all of Mr. Mackes's outgoing correspondence, giving the OCA access to more personal and confidential information, about both him and his family members, and putting him at the mercy of the OCA's handwriting, grammar, spelling, and punctuation skills or lack thereof.

74.     When submitting a number for inclusion in the CIPS list, a prisoner must provide not only the name and phone number of the person they wish to be able to call, but also that person's address and relationship to the prisoner. AR 850-12 ¶ IV.D.1.b and AR Form 850-12A.

75.     When a blind prisoner, including the Blind Plaintiffs, is forced to rely on an OCA to fill out the CIPS form, this gives the OCA access to the names, addresses, phone numbers, and relationships of the individuals the blind prisoner wishes to call.

76.     OCAs also read and write grievance forms, medical kites, and other written communications between blind prisoners – including the Blind Plaintiffs – and CDOC staff and offices.

77.     Reading and writing grievance forms, medical kites, and other written communications with CDOC staff and offices gives OCAs access to private medical information and other private, personal, and/or confidential information.

78.     Limitations in various OCAs' reading and writing skills have led to misunderstandings of the Blind Plaintiffs' grievances with the result, in some cases, that grievances have been denied.

79.     One of the phone numbers Mr. Mackes submitted to be on his CIPS list – written by an OCA – was rejected as "illegible."

80.     Because submissions to the CIPS list are only reviewed periodically, this caused a delay in Mr. Mackes's ability to call the person at that number.

81.     The lack of accessible information and the need to rely on OCAs and other prisoners denies blind prisoners, including the Blind Plaintiffs, access not only to the information itself but often to medical care, grievance programs, and other programs described in the written documents.

82.     For example, Mr. Mackes does not have independent access to posted information concerning events in the facility, so he did not know about – and was unable to attend – the production of "One Flew Over the Cuckoo's Nest," performed at SCF by fellow prisoners and the University of Denver Prison Arts Initiative. He only learned about this when he noticed that there were almost no other prisoners on his pod, and later asked where everyone had gone. He has likely missed many other meetings and events, though he cannot know which or how many since he does not know what is posted.

83.     Similarly, Mr. Chávez does not have independent access to posted information and was not informed of a poetry reading in the visiting room at FCF. He would have liked to attend and read his poetry, but did not know the event was occurring.

84.     Neither of the Blind Plaintiffs has independent access to the titler system.

85.     Instead, the Blind Plaintiffs must rely on OCAs or other prisoners to read messages on the titler system to them.

86.     The Blind Plaintiffs are often unaware of messages broadcast on the titler system.

87.     Because Mr. Mackes cannot read the daily menu, OCAs have falsely told him the meal was something they know he does not like and then, when he declined to go to chow, the OCAs have gone in his place and eaten his meals.

88.     Mr. Chávez has also had the experience of an OCA or other prisoner telling him the wrong menu, causing him to miss meals that he would have liked.

89.     On other occasions, OCAs have failed to inform the Blind Plaintiffs about and/or failed to arrive to escort them to meals, medical appointments, gym movements, and other appointments, causing them to miss those events.

90.     Prisoners are charged a fee when they miss a medical or psychological appointment; a fee that they are not charged if they attend the appointment.

91.     Blind prisoners have been charged this fee for missing medical and psychological appointments when, because of the lack of accessible printed information, they did not know they were occurring.

92.     Upon information and belief, CDOC provides computers in the law libraries of CTCF and FCF for inmate use and provides legal research and other information and software on those computers for inmate use.

93.     Prior to the pandemic, Mr. Mackes was at FCF.

94.     When he initially asked to have access to legal research in the library, Mr. Mackes learned that none of the computers was accessible to him.

95.     Upon information and belief, CDOC installed screen reading software on one computer at FCF but did not provide training to Mr. Mackes in how to use it.

96.     CDOC did not provide a scanner, printer, or other assistive technology to allow Mr. Mackes to access documents on the library computer.

97.     In approximately July 2020, Mr. Mackes was transferred to CTCF. At that time, due to the pandemic, library use was restricted for all prisoners.

98.     However, during this time, sighted prisoners could request printed legal materials.

99.     During this same time period, Mr. Mackes did not have access to a computer with screen reading software or any other accessible means of accessing legal or other documents.

100.    Mr. Mackes recently requested to use the computers at CTCF to conduct legal research.

101.    Despite the fact that he has been there for over eight months, he was told that the computers at CTCF do not have screen reading software.

102.    Similarly, Mr. Chávez was denied access to the FCF library and its computer during the pandemic, while sighted prisoners were permitted access to printed legal materials.

103.    During this same time period, Mr. Chávez did not have access to a computer with screen reading software or any other accessible means of accessing legal or other documents.

104.    Although the computer in the FCF library has screen reading software, CDOC has not provided Mr. Chávez with training on how to use it.

105.    Both Blind Plaintiffs have been told by CDOC staff that their OCAs can read to them from the library computers but cannot write or type into the computers on their behalf.

**B.  Lack of Access to Educational Programs**

106.    CDOC offers educational programming to prisoners in its custody.

107.    Blind prisoners are not afforded access equal to that of sighted prisoners to available or equivalent educational programs.

108.    When Mr. Mackes was at SCF, an instructor came through his pod taking names of individuals who wanted to take a computer course. When Mr. Mackes indicated that he wanted to, the instructor told him he could not take the course.

109.    When Mr. Mackes grieved this situation, CDOC stated that SCF did not have the software to provide all courses for blind prisoners and that the books were not available in audio for all classes.

110.    While at FCF, Mr. Mackes submitted kites requesting to be added to the wait list for approximately 18 different courses. He received no response to these kites.

111.    Mr. Chávez asked to take a computer class at FCF but was told that it was not accessible to him because he was blind.

112.    Information concerning available educational programs is not available in an accessible format.

113.    The Blind Plaintiffs would like to participate in educational programing if it is accessible to them.

**C. Lack of Access to Work Assignments**

114.    CDOC offers work assignments and vocational programming to prisoners in its custody.

115.    Blind prisoners are not afforded access equal to that of sighted prisoners to available or equivalent work assignments or vocational programs.

116.    Prisoners in custody of CDOC are required to work. AR 850-03 ¶ IV.A.2.

117.    CDOC makes a variety of work assignments available at various rates of pay.

118.    Prisoners who are unable to work due to a disability may be "ADA unassigned;" this assignment is paid at the lowest level. *Id*. ¶ IV.F.11.

119.    On information and believe, the ADA unassigned rate is less than $5 per month.

120.    On information and belief, other jobs available to sighted prisoners pay as much as $200 per month.

121.    On information and belief, the system for obtaining work assignments relies on the officer in charge of each job referring a prisoner to the prisoner's case manager, after which the case manager refers the prisoner to a board for approval.

122.    Job descriptions are made available in printed format but not in an accessible format, making it difficult for blind prisoners, including the Blind Plaintiffs, to learn about work assignments.

123.    At SCF, Mr. Mackes asked for a work assignment and was sent to a make-work class for an hour and a half each week and paid at the lowest – "ADA unassigned" – rate.

124.    At FCF, in response to Mr. Mackes's requests for work, he was assigned to disinfect the gym equipment for an hour and a half a day, again at the lowest pay rate. Often the officer in charge of the gym would send him away, telling him his work was not needed.

125.    At CTCF, in January of this year, Mr. Mackes was assigned to the laundry one hour per day for two days each week.

126.    Once there, the officer in charge of the laundry instructed him to sit to the side and do nothing.

127.     Following his first day in the laundry, the officer in charge called Mr. Mackes in and told him he had not requested Mr. Mackes work there, that Mr. Mackes was in the way, that he was disputing the work assignment, and that Mr. Mackes should not come back.

128.     As of the filing of this Complaint, Mr. Mackes is now back to being "unassigned."

129.     Because information concerning work assignments is not accessible, the Blind Plaintiffs have no way of learning about opportunities, much less requesting accommodations.

130.     Mr. Mackes sent a series of kites asking to be considered for any position in a variety of settings. He received no response.

131.     Mr. Chávez has requested meaningful work as a para professional and also in the dog training program. He has been turned down for these and other positions because he is blind.

132.     The Blind Plaintiffs would like to participate in meaningful work programing if it is accessible to them.

**D.  Other Discrimination**

     **a.  Paying for Auxiliary Aids and Services.**

133.      Most living units in CDOC facilities have clocks that sighted prisoners can see to tell the time.

134.     Blind prisoners cannot see these clocks and thus cannot independently know the time.

135.     Talking watches permit blind people to independently know the time.

136.     CDOC makes talking watches available through its canteen.

137.     However, CDOC requires blind prisoners to pay for talking watches.

### b. Unsanitary Conditions.

138.    Because Mr. Mackes has experienced the situation in which other prisoners stole items from his cell, he has been granted the accommodation of a single cell.

139.    For similar reasons, Mr. Chávez has also requested assignment to a single cell.

140.    Mr. Mackes is currently housed in a single cell that does not have plumbing. As a result, he is forced to use the common restroom.

141.    The commodes in the common restroom are often unsanitary and, because Mr. Mackes cannot see this, he has often had the experience of sitting in others' urine and feces.

142.    Mr. Mackes has medical conditions that make exposure to infection especially dangerous.

143.    As a result, Mr. Mackes has requested the accommodation of being housed in a single cell with plumbing.

144.    CDOC has refused Mr. Mackes's request to be housed in a single cell with plumbing.

145.    Upon information and belief, CDOC assigned an OCA to wipe the seat of the commode before Mr. Mackes used it.

146.    This causes Mr. Mackes to have to wait to summon an OCA – often from a different pod – before he can use the restroom.

147.    In addition, after making this request on several occasions, Mr. Mackes was accused of "abusing" the OCA program.

### c. OCAs

148. When Mr. Mackes was first transferred to CTCF in approximately July 2020, he was housed in an area with approximately 25 to 30 other prisoners, all of whom required the assistance of an OCA.

149. Many of the prisoners in this area used wheelchairs and needed the assistance of OCAs to be pushed from place to place.

150. Approximately three OCAs were assigned to this group of prisoners.

151. Only one or two OCAs were on duty on a given shift.

152. This caused long waits when Mr. Mackes needed any sort of assistance.

153. This also limited where Mr. Mackes could go. If no other prisoners from this area needed to go to the recreation yard, for example, he could not have OCA assistance to go to the yard, as that would leave the remaining prisoners without assistance.

### E. Associational Standing of the National Federation of the Blind of Colorado

154. NFB-CO brings this case in a representative capacity on behalf of blind prisoners in custody of CDOC and blind persons who may be placed in custody of CDOC in the future.

155. NFB-CO members Brian Mackes and Adrian Chávez have standing to bring the claims described below in their own right.

156. NFB-CO's purpose includes ensuring that blind Coloradoans have full and equal access to all of the services, programs, and activities of the State.

157. The interests that NFB-CO seeks to protect in this lawsuit are germane to that purpose.

158.     NFB-CO does not seek damages in this case on its own behalf or on behalf of its

members, so neither the claims below nor the requested relief require the participation of

individual members in the lawsuit.

**FIRST CLAIM FOR RELIEF:**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12131 *et seq.***

159.      Plaintiffs incorporate the allegations set forth in the remainder of this Complaint

as if fully set forth herein.

160.     Title II of the ADA prohibits public entities such as the CDOC from excluding

individuals with disabilities from participation in or denying them the benefits of their services,

programs or activities, or otherwise subjecting such individuals to discrimination. 42 U.S.C.

§ 12132.

161.     Because they are blind, the Blind Plaintiffs and other blind prisoners are

individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12102.

162.     CDOC knows that Mr. Mackes and Mr. Chávez are blind.

163.     The Blind Plaintiffs' need for accommodations is obvious.

164.     Defendant CDOC excludes the Blind Plaintiffs and other blind prisoners from

participation in and/or denies them the benefits of its services, programs, and/or activities and/or

subjects them to discrimination on the basis of disability, in violation of Title II and its

implementing regulations as more fully described in this Complaint.

165.   Such discrimination includes but is not limited to:

a.   denying the Blind Plaintiffs and other blind prisoners the opportunity to participate in or benefit from CDOC's aids, benefits, and/or services, *see* 28 C.F.R. § 35.130(b)(1)(i);

b.   affording the Blind Plaintiffs and other blind prisoners opportunities to participate in or benefit from aids, benefits, and/or services that are not equal to those afforded others, *see id.* § 35.130(b)(1)(ii);

c.   providing the Blind Plaintiffs and other blind prisoners with aids, benefits, and services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, *see id.* § 35.130(b)(1)(iii);

d.   using criteria and methods of administration that have the effect of subjecting the Blind Plaintiffs and other blind prisoners to discrimination on the basis of disability, *see id.* § 35.130(b)(3)(i);

e.   using criteria and methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of CDOC's program with respect to the Blind Plaintiffs and other blind prisoners, *see id.* § 35.130(b)(3)(ii);

f.   failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *see id.* § 35.130(b)(7);

g.  failing to ensure that communications with the Blind Plaintiffs and other blind prisoners are as effective as communications with others, *see id.* § 35.160(a)(1);

h.  failing to furnish appropriate auxiliary aids and services where necessary to afford the Blind Plaintiffs and other blind prisoners an equal opportunity to participate in, and enjoy the benefits of, CDOC's services, programs, or activities, *see id.* § 35.160(b)(1); and/or

i.  failing to give primary consideration to the requests of the Blind Plaintiffs and other blind prisoners concerning the types of auxiliary aids and services necessary, *see id.* § 35.160(b)(2).

166.    The Blind Plaintiffs and other blind prisoners are qualified to participate in CDOC's services, programs, and activities within the meaning of Title II.

167.    Defendant CDOC's actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of the Title II rights of the Blind Plaintiffs and other blind prisoners.

168.    As a direct and proximate result of Defendant CDOC's acts, omissions, and violations alleged above, the Blind Plaintiffs have suffered damages, including but not limited to pain and suffering, inconvenience, and emotional distress as more fully described above.

169.    The Blind Plaintiffs and other blind prisoners have been injured and aggrieved by and will continue to be injured and aggrieved by Defendant CDOC's discrimination.

**SECOND CLAIM FOR RELIEF:**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**
**29 U.S.C. § 794**

170.    Plaintiffs incorporate the allegations set forth in the remainder of this Complaint as if fully set forth herein.

171.    Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance such as CDOC. 29 U.S.C. § 794.

172.    Because they are blind, the Blind Plaintiffs and other blind prisoners are individuals with disabilities within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

173.    CDOC knows that Mr. Mackes and Mr. Chávez are blind.

174.    The Blind Plaintiffs' need for accommodations is obvious.

175.    Defendant CDOC excludes the Blind Plaintiffs and other blind prisoners from participation in and/or denies them the benefits of its services, programs, and/or activities and/or subjects them to discrimination on the basis of disability in violation of Section 504 and its implementing regulations as more fully described in this Complaint.

176.    Such discrimination includes but is not limited to:

a.   denying the Blind Plaintiffs and other blind prisoners opportunities to participate in CDOC's programs and activities, *see* 28 C.F.R. § 42.503(b)(1)(i);

b.   denying the Blind Plaintiffs and other blind prisoners an equal opportunity to achieve the same benefits that others achieve in CDOC's programs and activities, *id.* § 42.503(b)(1)(ii);

21

c. using criteria or methods of administration that either purposely or in effect discriminate on the basis of disability or defeat or substantially impair accomplishment of the objectives of the CDOC's program or activity with respect the Blind Plaintiffs and other blind prisoners; *id.* § 42.503(b)(3);

d. failing to provide appropriate auxiliary aids to the Blind Plaintiffs and other blind prisoners, there by discriminatorily impairing or excluding them from participation in CDOC's programs and activities, *see id.* § 42.503(f); and/or

e. failing to provide reasonable accommodations to the Blind Plaintiffs and other blind prisoners as necessary to ensure that they have meaningful access to CDOC's programs, activities, or benefits, *see Alexander v. Choate*, 469 U.S. 287, 301 (1985).

177.    The Blind Plaintiffs and other blind prisoners are qualified to participate in CDOC's services, programs, and activities within the meaning of Section 504.

178.    Defendant CDOC's actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of the Section 504 rights of the Blind Plaintiffs and other blind prisoners.

179.    As a direct and proximate result of Defendant CDOC's acts, omissions, and violations alleged above, the Blind Plaintiffs have suffered damages, including but not limited to pain and suffering, inconvenience, and emotional distress as more fully described above.

180.    The Blind Plaintiffs and other blind prisoners have been injured and aggrieved by and will continue to be injured and aggrieved by Defendant CDOC's discrimination.

**WHEREFORE, Plaintiffs respectfully request:**

1.      That this Court assume jurisdiction;

2.      That this Court declare the actions of Defendant described in this Complaint to be in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

3.      That this Court enter an injunction ordering Defendant to cease violating the rights of blind prisoners, including the Blind Plaintiffs, and to cease discriminating against them on the basis of disability;

4.      That this Court enjoin Defendant from refusing to reasonably modify its policies, procedures and practices and from refusing to provide auxiliary aids and services necessary for blind prisoners, including Blind Plaintiffs, to access CDOC documents, legal research and other library information, mail, educational program materials, work program materials, and other printed materials independently and privately;

5.      That this Court enjoin Defendant from refusing to ensure that blind prisoners, including Blind Plaintiffs, have equal opportunity to participate in and benefit from educational and work programs available to sighted prisoners;

6.      That this Court enjoin Defendant from housing blind prisoners, including the Blind Plaintiffs, in a double cell or in a cell without plumbing;

7.      That this Court enjoin Defendant from denying blind prisoners, including Blind Plaintiffs, the ability to read, write, conduct legal and other research, and access other CDOC programs independently and privately without unnecessarily relying on OCAs;

8.      That this Court award Plaintiffs Mackes and Chávez compensatory damages pursuant to Title II of the ADA and Section 504;

9.      That this Court award Plaintiffs and/or their attorneys reasonable attorneys' fees and costs; and

10.     That this Court award such additional or alternative relief as may be just, proper, and equitable.

Respectfully submitted,

CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER

/s/ Amy F. Robertson
Amy F. Robertson
1245 E. Colfax Ave. Suite 400
Denver, CO 80218
303.757.7901
arobertson@creeclaw.org

Martha M. Lafferty
525 Royal Parkway, #293063
Nashville, TN 37229
615.913.5099
mlafferty@creeclaw.org

BROWN, GOLDSTEIN & LEVY, LLP

Eve L. Hill
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
410.962.1030
ehill@browngold.com

Attorneys for Plaintiffs

Dated: April 21, 2021