## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement is made as of the _____ day of _____ 2022 (notwithstanding the actual date of execution) by and between the Colorado Department of Corrections ("CDOC"), Dean Williams in his official capacity as the Executive Director of CDOC, and the Office of Risk Management for the State of Colorado (collectively, the "State") and Brian Mackes, Adrian Chávez, and the National Federation of the Blind of Colorado (collectively, "Plaintiffs;" Messrs. Mackes and Chávez will be referred to as the "Individual Plaintiffs").

WHEREAS, Plaintiffs filed a civil lawsuit entitled BRIAN MACKES, ADRIAN CHÁVEZ AND THE NATIONAL FEDERATION OF THE BLIND OF COLORADO v. COLORADO DEPARTMENT OF CORRECTIONS and DEAN WILLIAMS in his capacity as Executive Director of the Colorado Department of Corrections, United States District Court for the District of Colorado, Civil Action No. 21-cv-1100 (the "Litigation"), alleging that the Colorado Department of Corrections failed to abide by Title II of the Americans with Disabilities Act (42 U.S.C. § 12131), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) with respect to the accommodations it provides to blind and low vision individuals in its custody (the "Allegations"); and

WHEREAS, the Parties wish to avoid the uncertainties and expense of litigation and to settle and compromise, on the terms set forth below, all claims for declaratory and injunctive relief that are or could be asserted in any litigation or any claim otherwise arising from or relating to the Allegations; and

WHEREAS, the Parties acknowledge that the promises and covenants contained herein are good and valuable consideration for all Parties to execute this Agreement;

NOW, THEREFORE, in consideration of the foregoing premises, the Parties hereby agree and covenant as follows:

1.    Goal: That Blind Prisoners will have private and independent access to information, processes, programs, and facilities available to sighted Prisoners on an equal basis with sighted prisoners, consistent with legitimate security concerns.

2.    Definitions

a.    Providing materials in an "Accessible Format" includes but is not limited to the following options based on the needs of the individual:

# EXHIBIT 1

       i.      Providing materials so as to be screen-readable with Assistive Technology (*e.g.* screen reader, screen magnification) that is available to and usable by the Prisoner; or

       ii.     Audible (*e.g.,* CD); or

       iii.    In large print; or

       iv.    In Braille.

    b.    "AIC" means ADA Inmate Coordinator.

    c.    "AR" means Administrative Regulation.

    d.    "Agents" includes any entity providing services to CDOC whether by contractual, licensing or other arrangements.

    e.    "Assistive Technology" means any item, piece of equipment, software program, or product system that is used to increase, maintain, or improve the functional capabilities of persons with disabilities. Assistive Technology shall be provided to Blind Prisoners without charge to the Prisoner.

    f.    "Auxiliary Aids and Services" has the meaning assigned to it in 28 C.F.R. § 35.104.

    g.    "Blindness Skills" means mobility and orientation, computer and assistive technology use (including typing, use of screen readers, low vision alternatives, and other assistive technology), Braille literacy, and vocational and independent living/environment management skills.

    h.    "Blind" means a person whose best corrected visual acuity is 20/200 or worse in the better eye; or whose visual field limitation is such that the widest diameter of his visual field, in the better eye, is 20 degrees or less; or someone who cannot read standard print without magnification beyond that provided by regular glasses.

    i.    "Blind/Print-Disabled" means that subset of Blind individuals who are not able to visually read Print Materials with maximum feasible magnification.

    j.    "Day Hall" means an area of a housing unit in a CDOC facility within which a Prisoner can circulate at will without permission within the time frames permitted by prison staff for that housing unit.

k.     "Education" or "Educational" includes Academic Education, Adult Basic Education, Career and Technical Education, Cognitive Education, and Post-Secondary Education and any other programs under the Correctional Education Program as those terms are used in AR 500-01.

l.     "Health Care Appliance" means an assistive device or medical support equipment which has been prescribed for an inmate and/or approved by a licensed health care provider. Health Care Appliances include canes, prescription eyeglasses, protective eyewear, and artificial eyes.

m.     "Independent" or "Independently" means without assistance from others.

n.     "Key Print Materials" mean printed materials provided by CDOC for regular or repeated use among CDOC Prisoners or all Prisoners at a particular facility, including:

   i.     Prisoner Handbooks;

   ii.    Prisoner Orientation materials;

   iii.   Publicly available Administrative Regulations and Institution Adjustments;

   iv.    Materials available to Prisoners to prepare for or request parole, community corrections, or release to the extent these exist;

   v.     All materials posted for Prisoners to review or intended to convey information to Prisoners;

   vi.    Templates of procedures for and information required to be provided in:

      (1)    Grievance and discipline processes;

      (2)    Kites, sick calls, and other Print methods for communicating with CDOC officials;

      (3)    Requests for accommodation;

      (4)    Medical forms;

3

        (5)     Canteen and other purchase and expenditure requests;

        (6)     Inmate banking;

        (7)     Telephone approvals.

    vii.    Any forms that that are provided to the Prisoner as a response (i.e. disposition of contraband, rejection of mail, grievance response).

    o.    "Large Print" means at least 16-point font Arial or equivalent.

    p.    Qualified Offender Care Aide ("OCA") means an OCA I or II who has a GED or high school diploma, is able to read and write effectively, accurately, and impartially, and has received training as set forth in Paragraph 15.

    q.    "Print," "Printed" and "Print Materials" means information conveyed visually whether printed on paper or available in an electronic or other medium.

    r.    "Prisoner" means an individual incarcerated in the custody of CDOC.

    s.    "Reasonable Modification" means one or more changes to policies, practices, or procedures necessary to avoid discrimination on the basis of disability where such changes constitute neither an undue burden nor fundamental alteration. Reasonable Modifications include but are not limited to provision of Auxiliary Aids and Services, Assistive Technology, and/or materials in an Accessible Format. With respect to work assignments, Reasonable Modifications include but are not limited to changes to the method of accomplishing tasks that allow a Blind Prisoner to effectively complete the essential functions of a work assignment, restructuring positions (e.g., reassigning marginal functions of the job), providing accessible equipment, Assistive Technology, accessible materials, magnification, adjustments to time limits, and increased or modified training.

3.    Ensuring Equal Access

    a.    CDOC will continue to evaluate and accommodate each incoming Prisoner at intake to establish whether they are Blind as defined herein. For Prisoners who become Blind or for other reasons are not

identified as Blind at intake, upon reasonable request, CDOC will continue to timely evaluate Prisoners to determine whether they are Blind as defined herein.

b.    CDOC shall give primary consideration to the preferred Accessible Format and other Auxiliary Aids and Services of the Blind Prisoner, meaning it will honor their expressed choice unless it can demonstrate that another equally effective means of communication is available or that the Blind Prisoner's expressed choice presents an undue burden, fundamentally alters the program or activity in question, or poses a threat to safety and security.

c.    Any Accessible Formats, Assistive Technology, or Reasonable Modifications determined to be appropriate for a Blind Prisoner shall be provided to them at any facility at which they are housed, consistent with security. Accommodations approved for one facility remain approved at all facilities, subject to security considerations. If a Blind Prisoner is transferred to a facility of equivalent security, it shall not be an excuse to providing Reasonable Modifications that the new facility does not yet have the necessary materials, technology, or equipment. CDOC will start the process of implementing Accessible Formats, Assistive Technology, Health Care Appliances, or other Auxiliary Aids and Services or Reasonable Modifications previously approved for a Blind Prisoner at the new facility at the time it decides to transfer the Blind Prisoner, and the same shall be implemented within seven days of the Blind Prisoner's arrival at the new facility, and available interim accommodations will be provided.

d.    CDOC shall ensure that its telephone system permits Blind Prisoners to place phone calls Independently.

e.    CDOC shall ensure that its canteen program and processes for other purchase and expenditure requests permit Blind Prisoners to make purchases Independently.

f.    CDOC shall ensure that its inmate banking program permits Blind Prisoners to engage in bank transactions Independently.

g.    CDOC's process shall ensure that CDOC denies requests for Reasonable Modifications and Auxiliary Aids and Services only when CDOC documents that the denial meets the requirements of 28 C.F.R. § 35.164.

h.    The parties will designate one or more mutually agreed upon expert consultants in blindness issues and adaptation, with whom CDOC

5

can confer with periodically throughout the Agreement to undertake the following tasks:

      i.     recommend to CDOC Assistive Technology and other measures to implement this agreement;

      ii.     recommend to CDOC Reasonable Modifications and Auxiliary Aids and Services to make facility recreational, educational, vocational, and other programs and facilities accessible to Blind Prisoners;

      iii.     report annually on any newly-available Assistive Technology and improvements to existing Assistive Technology that it recommends CDOC adopt;

      iv.     evaluate Blind Prisoners to assess their Basic Blindness Skills, appropriate Accessible Formats, Assistive Technology, Auxiliary Aids and Services, and other Reasonable Modifications, and training in the same that each Blind Prisoner requires;

      v.     provide to Blind Prisoners and Qualified Escorts/Readers/Scribes the training required by Paragraph 15;

      vi.     consult with the AIC regarding work assignment Reasonable Modifications pursuant to Paragraph 7; and

      vii.     consult with CDOC regarding the trainings required by Paragraph 15.

    i.     The Expert referenced above shall also conduct the evaluations referenced in Paragraph 3(h)(iv):

      i.     once for each Blind Prisoner within 30 days of execution of this Agreement;

      ii.     for each incoming Blind Prisoner, within 30 days of intake; and

      iii.     for any Blind Prisoner, upon reasonable request.

4.    Accessible Materials Made Available by CDOC

    a.    CDOC shall provide each Blind/Print Disabled Prisoner with access to a laptop or equally effective device which will be loaded with Key

Print Materials to permit independent access to these items in a screen readable format. Materials on the laptop will be updated as necessary and will be available for use within the cell or Day Hall consistent with security protocols. The laptops will also be equipped with an accessible ebook reader program, a typing tutorial program, and screen reader software.

     i.    CDOC will order devices currently required within five business days of execution of this Agreement and will provide them to Blind/Print Disabled Prisoners within 30 calendar days of receipt.

     ii.    Following this initial period, when a Blind/Print-Disabled Prisoner enters CDOC custody or becomes Blind/Print-Disabled while in CDOC custody after execution of this Agreement, a laptop as described in paragraph 4.a will be ordered within 5 business days of the Prisoner's arrival or request and provided within 30 calendar days of receipt.

     iii.    CDOC will provide laptops for checkout at the Denver Reception and Diagnostic Center for Blind/Print-Disabled Prisoners to use pending assignment to a facility.

b.    CDOC will provide, in the Prisoner's Day Hall, a printer and a scanner that is compatible with, and networked to, the laptops provided to Blind/Print-Disabled Prisoners and that is equipped with the Assistive Technology necessary to permit such Prisoner to Independently scan and print Key Print Materials, incoming and outgoing personal and legal correspondence, and internal communications such as grievances and kites.

c.    CDOC shall allow Blind/Print Disabled Prisoners to submit any CDOC forms (e.g., grievance forms, kites, requests for accommodation) in a word processing format without regard to the usual formatting of the form. CDOC will provide templates of all such forms stating the required components of the original document and any space requirements or limitations noted in the applicable AR. If such components and space requirements or limitations are clearly stated in the template, Blind/Print Disabled Prisoners must abide by them.

d.    Once an Accessible Format is noted in a Blind Prisoner's ADA accommodation file, that Prisoner will not be required to specifically request that format for future Key Print Materials.

e.    If Key Print Materials are revised or newly issued during the

7

term of this Agreement, CDOC shall create and make available such Key Print Materials to Blind/Print-Disabled Prisoners' laptops and in Large Print (for Prisoners whose ADA accommodations call for Large Print) within 1 business day of the corresponding Print Materials being made available to sighted Prisoners. Other Accessible Formats (audio, Large Print) will be provided within 10 days of a request from a Prisoner for the alternate format.

f.     All bulletin board and other general postings for the benefit of the Prisoner population shall be posted in Large Print and shall be made available on the laptops of Blind/Print-Disabled Prisoners. Upon request, such bulletin board and other general postings will be provided to such Prisoner in a larger font, audio, or Braille as appropriate for the individual.

g.     If legal research or other Print Materials are provided to sighted Prisoners during lockdown or while in segregation or other restricted housing, Blind/Print-Disabled Prisoners shall be provided Assistive Technology sufficient to access the same materials in their cells. If approved Assistive Technology is not available for use in a Blind Prisoner's cell, they will be permitted a reasonable time out of their cell to use a computer equipped with Assistive Technology.

h.     If providing a Print Material in an Accessible Format would be an undue burden or fundamental alteration, CDOC shall assign a case manager or a Qualified OCA I or OCA II to assist the Blind Prisoner, consistent with the choice of the Blind Prisoner.

5.     Assistive Technology

a.     CDOC shall provide the Assistive Technology and other Auxiliary Aids and Services necessary for Blind Prisoners to Independently access CDOC programs, activities, technology, and Accessible Format Materials. The AIC shall maintain a list of pre-approved Assistive Technology available to Blind Prisoners and shall provide the list to Blind Prisoners upon intake or upon request. Blind Prisoners will not be limited to choosing Assistive Technology from the list.

b.     Within 60 days of Execution of this Agreement, CDOC shall make at least the following Assistive Technology available to Blind Prisoners to use in their cells upon request:

i.     At least one type of portable scanner/reader or pen

8

scanner/reader;

    ii.    Digital magnifiers;

    iii.    Digital recorders;

    iv.    Talking calculators;

    v.    Talking or Braille watches; and

    vi.    Headphones compatible with any devices provided that offer audio capability.

    c.    If CDOC provides tablets or any other technology to Prisoners, those tablets or technologies shall be accessible to and usable by Blind Prisoners including Blind/Print-Disabled Prisoners.

    d.    CDOC will ensure Blind Prisoners have access to talking books and ebooks similar to sighted Prisoners' access to books (e.g., through interlibrary loan, library checkout, gifts from family and friends, etc.).

    e.    If audio description is available on the television equipment in any housing unit in which a Blind Prisoner is housed, CDOC shall ensure the common television is operated with audio description enabled at all times.

    f.    If a Blind Prisoner is transferred to a facility that does not have the technology required by this Agreement and will be at the facility for more than 2 weeks, CDOC will provide such technology within 30 days of the Prisoner's arrival at the facility.

    g.    CDOC shall maintain any materials in Accessible Formats, Assistive Technology, Auxiliary Aids and Services, and any equipment required by Reasonable Modifications in good condition and working order.

    h.    Within 30 days of execution of this Agreement, CDOC shall install a screen reader and screen magnification technology on an existing computer or laptop that can be accessed and used by Blind Prisoners, in facility intake areas, infirmaries/clinics, and any other location in which prisoners are asked to provide or review Printed medical information. If a new laptop is needed, CDOC will order the laptop and will provide it within 30 calendar days of receipt.

6.    Orientation

    a.    Starting within 60 days of the Execution of this Agreement, as part of intake and orientation, CDOC will provide Blind Prisoners comprehensive information in Accessible Formats on the following subjects:

        i.    Their rights as individuals with disabilities and the contact information and responsibilities of the CDOC ADA Inmate Coordinator;

        ii.    The Accessible Formats, Assistive Technology, Health Care Appliances (such as white canes), and Reasonable Modifications available to them, the processes for accessing them, and the Blind Prisoner's knowledge and preferences regarding them;

        iii.    The availability of the Blindness Skills course, screen reader training, and orientation and mobility trainings; and

        iv.    A physical orientation to the facility in which the Blind Prisoner will be housed, conducted by a qualified orientation and mobility instructor.

7.    Work Assignments

    a.    CDOC shall ensure that all processes related to work assignments, including but not limited to lists of available assignments, referral and application processes, selection, hiring, evaluation, pay, and good time credit are accessible to Blind prisoners. Specifically, CDOC shall ensure that the Master Program Schedule and all job and program descriptions are available in an Accessible Format and are accessible on the laptops or equally effective device provided to Blind/Print Disabled Prisoners.

    b.    CDOC shall provide a method and instructions (available in an Accessible Format) for Blind Prisoners to search for work assignments and other programs for which they meet the eligibility requirements such as location, sentence, or nature of underlying offense.

    c.    CDOC shall provide a method (available in an Accessible Format) for Blind Prisoners to apply for work assignments. If the Blind Prisoner is rejected for the position, CDOC shall inform them in writing (in an Accessible Format), stating all reasons for the rejection and all

Reasonable Modifications that CDOC considered before reaching the decision to reject.

      d.    A Blind Prisoner shall not be disqualified from any position on the basis of their blindness unless no Reasonable Modification is available that would make it possible for the Blind Prisoner to perform the essential duties of the position without posing a direct threat to the health, safety, or security of the Blind Prisoner, other prisoners or staff, or the facility.

      e.    If it is determined that no Reasonable Modification is available to make it possible for the Blind Prisoner to perform the essential functions of the assignment, the Blind Prisoner shall be referred for selection to the next available assignment for which they meet the general qualifications.

8.    Education and Other Programming

      a.    CDOC shall ensure that all processes, assessments and tasks related to all voluntary and required educational, counseling and other programming are accessible to Blind Prisoners in the format most suitable for the individual Blind Prisoner.

      b.    If an Educational course or other programming involves use of a computer by participating Prisoners, CDOC shall ensure that a computer with any necessary Assistive Technology is available to any Blind Prisoner seeking to enroll in the course.

      c.    CDOC shall provide the opportunity for each Blind Prisoner to take Educational courses and other programming that are equivalent to the Educational courses and programming available to sighted Prisoners in their facility.

      d.    CDOC shall continue to make available a course in Braille literacy to Blind Prisoners.

9.    CDOC will work with the Expert to consider, and if practicable, implement the provision of accessible sports/recreation equipment and accessible board games at each facility.

10.    Medical Privacy: CDOC shall make such Reasonable Modifications as are necessary to ensure that Blind Prisoners can communicate with medical personnel orally and in writing without the need for assistance from a third party whenever possible, and absent emergent situations.

11.    Housing

   a.    To the extent a Blind Prisoner is confined in a facility that has access to single cells or single occupancy double cells for prisoners, CDOC shall, upon request, consider the Prisoner's Blindness or other disabilities as a weighted factor in determining whether to house them in a single cell.

   b.    Blind Prisoners will maintain all privileges for which they are eligible in any facility or unit in which they may be housed, regardless of the privileges available generally in that location.

12.    Inmate or Staff Assistance: For tasks that cannot be accomplished through the Reasonable Modifications, Assistive Technology or Auxiliary Aids herein, or during any periods when Assistive Technology and/or other Auxiliary Aids and Services are unavailable or out of service, or if a Blind Prisoner prefers human assistance, a Qualified OCA I or OCA II or case manager will provide assistance, consistent with the choice of the Prisoner.

13.    Navigation

   a.    To the extent consistent with proper security and inmate safety, CDOC shall permit Blind Prisoners the opportunity to navigate facilities independently or, if a Blind Prisoner prefers assistance, the assignment of a Qualified OCA I or OCA II as appropriate for escort.

   b.    CDOC shall ensure that Blind Prisoners have priority access to recreation, gym, and meals.

   c.    CDOC shall require OCAs assigned to assist Blind Prisoners to remain with the Blind Prisoner and provide navigation services during recreation periods. In addition, CDOC shall require recreation porters to assist Blind Prisoners with using gym equipment.

14.    Documentation (in addition to any documentation called for elsewhere in the Agreement)

   a.    In the event CDOC decides that any measure requested by a Blind Prisoner or otherwise called for by this Agreement, including but not limited to those recommended by the Expert, would constitute a fundamental alteration, undue burden, or threat to security, such decision shall be documented in writing, with supporting rationale, and communicated to the Blind Prisoner and to the NFB-CO. Any determination that a measure would constitute an undue financial burden

12

must take into consideration all resources available to CDOC.

b.      Documentation of any determination covered by Paragraph 14(a), must specify any alternative actions to be taken that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, Blind Prisoners receive the benefits or services provided by CDOC.

c.      CDOC will provide a report from the Accommodation Tracking System (ATS) to NFB-CO and its counsel on a quarterly basis showing who has requested modifications for their blindness/low vision and what has been approved or denied.

d.      CDOC will provide a quarterly report to NFB-CO and its counsel regarding the employment and educational programming of the named plaintiffs showing assignments that they have participated in, been waitlisted for, or been rejected from (and all reasons for such rejection).

e.      Quarterly during the term of this Agreement CDOC shall provide NFB-CO and its counsel a lists of grievance summaries for each Blind Prisoner, and lists of any new accommodations that are pre-approved.

f.      CDOC will also quarterly provide NFB-CO and its counsel all grievances and accommodation requests and responses raised by the named Plaintiffs in *Mackes et al. v. CDOC*.

15.    Training

a.      CDOC shall provide all Blind Prisoners, OCAs, and CDOC staff who work with Blind Prisoners (*e.g.* librarians, teachers, case managers) the training necessary to use any Assistive Technology called for by this Agreement, training on guiding and assisting Blind Prisoners from a certified mobility and orientation instructor, and training on acting as a reader or scribe.

b.      CDOC shall provide Blind Prisoners and OCAs any Blindness Skills training necessitated by blindness to use and benefit from the programs, services, activities, and facilities of the CDOC, including orientation and mobility training.

c.      CDOC shall provide appropriate training to all CDOC employees and Agents who have contact with Blind prisoners concerning

13

the requirements of this Agreement and the ADA with respect to Blind people.

     d.    Trainings called for by Paragraph 15 will be provided:

         i.    Within 60 days of the Effective Date to current Blind Prisoners, current employees and Agents, and current OCAs who work with Blind Prisoners;

         ii.    Within 60 days of intake to new Blind Prisoners;

         iii.    Within 10 days of assignment as an OCA I or OCA II assisting a Blind Prisoner;

         iv.    Periodically, including at least annually, as a refresher.

16.    Implementation

     a.    Within 30 days of execution of this Agreement, CDOC will provide a notice (in Accessible Formats) to all Prisoners of the contents of this Agreement and the opportunity to be evaluated.

     b.    Representatives of CDOC, NFB-CO, and the expert shall meet monthly for the first three months of this agreement, quarterly for the following year, every six months for the following two years, and annually going forward to discuss the implementation of this Agreement and the needs of Blind Prisoners.

17.    Dispute Resolution

     a.    Informal Dispute Resolution:

         i.    If a Plaintiff or CDOC believes that a dispute exists relating to the performance or interpretation of this Agreement, they shall notify the other Party in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution process.

         ii.    The other Party shall respond in writing to such notice within 10 business days of receipt of the notice.

         iii.    Within 10 business days of receipt of the response described in the previous subparagraph, counsel for both Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally.

iv.     Only if the Parties are unable to resolve the dispute through the informal process described in this Paragraph 17(a) within 30 days, may the dispute be submitted for judicial resolution.

b.     Resolution by the Court:

i.     If, after completing the Informal Dispute Resolution process described in Paragraph 17(a), either party believes that the other has breached this Agreement, that party may submit the dispute for resolution by Magistrate Judge Michael E. Hegarty or, if Judge Hegarty is unavailable, to another judge in the United States District Court for the District of Colorado.

ii.     In resolving the dispute, the Court will apply the standards of Title II and Section 504.

iii.     The prevailing party in any court proceeding shall be entitled to their attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and the cases interpreting that provision including the fee-shifting standards in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978).

18.     Enforcement

a.     The Parties agree that the United States District Court for the District of Colorado (the "U.S. District Court") shall retain continuing jurisdiction over any attempt to enforce this Agreement by any of the Parties. The Parties agree to jointly file this Agreement with the Court, together with a joint motion to conditionally dismiss the Complaint pursuant to Federal Rule of Civil Procedure 41(a), with the Court retaining jurisdiction to enforce the Agreement in the event of any disputes that may arise between the Parties until the Agreement terminates.

b.     Upon an alleged breach of the Agreement, Plaintiffs may move the U.S. District Court to enforce the Agreement, subject to subparagraph 17 of this Agreement.

19.     Damages and Attorneys' Fees: This Settlement Agreement is conditioned upon the execution of separately-negotiated agreements providing for payment of damages to Plaintiffs and attorneys' fees to Plaintiffs' counsel.

20.     Prison Litigation Reform Act

a.     This Settlement is subject to the provisions of the Prison Litigation Reform Act.

b.     For purposes of this Agreement only and in order to settle this matter, the parties agree and represent that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a).

c.     The parties agree and represent that the prospective relief specifically contained in this Agreement is narrowly drawn, extends no further than necessary, is the least intrusive means necessary to address the Plaintiffs' allegations, and is not intended to have an adverse impact on public safety or the operation of a criminal justice system.

21.   Communications:

Any notice or communication required or permitted to be given to Plaintiffs or Plaintiffs' Counsel or CDOC under this Consent Decree shall be given in writing by email or U.S. Mail, addressed as follows:

To CDOC:

Kathleen Spalding
Nicole Gellar
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor Denver, Colorado 80203
Nicole.gellar@coag.gov
kit.spalding@coag.gov

To Plaintiffs:

Amy Robertson
Fox & Robertson
1 Broadway
Suite B205
Denver, CO 80203
arob@foxrob.com

Eve Hill
Brown Goldstein & Levy
120 E. Baltimore Street
Suite 2500

Baltimore, MD 21202
ehill@browngold.com

If the above addresses or the appropriate contacts change, it is the responsibility of the Party whose address is changing to give written notice of said change to all other Parties within 30 business days following the effective date of said change.

22.    Release: Plaintiffs, for themselves and their heirs, successors, assigns, agents, and representatives, including legal representatives, hereby release, acquit, and forever discharge the State of Colorado, the State's departments, agencies, and instrumentalities, and the State's current and former officers, employees, agents, and successors from any and all claims, demands, causes of action, and obligations, whether asserted or unasserted, whether matured, unmatured, or wholly inchoate, and whether known or unknown, including but not limited to all claims pursuant to Title II of the Americans with Disabilities Act (42 U.S.C. § 12131), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) with respect to the Allegations concerning conduct occurring before or during the Term of this Agreement, provided that nothing in this Agreement releases the following: 1) claims set forth in *Chávez v. Polis*, No. 20-cv-03798-LTB-GPG or any appeal thereof, except for any claims by Plaintiff Chavez that he has been denied reasonable accommodation for his blindness or limited vision, which claims are released hereby; 2) any claim relating to the conviction or sentence of either Individual Plaintiff.

23.    Stipulation to Dismiss and Covenant Not to Sue: The Parties agree to jointly file this Agreement with the Court, together with a stipulation to conditionally dismiss the Complaint pursuant to Federal Rule of Civil Procedure 41(a), with the Court retaining jurisdiction to enforce this Agreement in the event of any disputes that may arise between the Parties until the Agreement terminates. Plaintiffs expressly agree and covenant that it will not sue or assert any cause of action, at law or equity, and whether before a court of law or an administrative agency, on their behalf, or on behalf of their members, against the State or any of the State's current or former officers, officials, employees, departments, or agencies for any claims for damages or injunctive relief that Plaintiff has or may have in the future arising from the Allegations. Notwithstanding the above, nothing in this Agreement prevents: 1) Plaintiff Chavez from asserting claims set forth in *Chávez v. Polis*, No. 20-cv-03798-LTB-GPG or any appeal thereof, except for any claims that Plaintiff Chavez was denied reasonable accommodations for his blindness or limited vision, which claims are released hereby; 2) either Individual Plaintiff from asserting any claim relating to their convictions or sentences.

24.     Intended Third Party Beneficiaries: The Parties agree and acknowledge that all agencies, officers and employees of the State, although they are not signatory Parties hereto, are intended third-party beneficiaries of this Release and Settlement Agreement, and each and all of them shall have the right to rely upon and enforce this Release and Settlement Agreement in any court of competent jurisdiction in the event that any action or proceeding based upon claims or causes of action released hereby may be threatened or commenced.

25.     No Admission of Liability: This Agreement is entered into for the purposes of avoiding litigation and does not constitute an admission of liability or evidence of any wrongdoing or omission of any kind.  This Agreement shall not be offered or received into evidence or otherwise filed or lodged in any proceeding against any party except as may be necessary to prove or enforce its terms.

26.     Open Records Requirements: This Release and Settlement Agreement is not confidential.  Plaintiffs understand and agree that the State of Colorado and its agencies and departments are bound by applicable public disclosure laws including, without limitation, the provisions of C.R.S. §24-72-101, et seq. (Colorado Open Records Act), as presently or subsequently amended, and that the State of Colorado may be required to disclose this Release and Settlement Agreement in its entirety if requested to do so under such statutes. Plaintiffs understand that this Release and Settlement Agreement are public records and further agree that they will not hold the State of Colorado, or its administrators, officers, agents, or employees, liable for release of information contained in public records under such statutes.

27.     Warranties and Representations: Plaintiffs represent and warrant that they have not assigned or transferred any claim arising from or related to the Allegations to any third party and that no third party has been subrogated to their interest in claims purported to be released hereby, or, if any third party has been subrogated to Plaintiffs' interest, the interest of any subrogee has been settled, compromised, and extinguished.  Plaintiffs agree to defend and indemnify the State, its departments, agencies, officers, and employees, and to hold them harmless against the claims of any assignee or subrogee to claims purported to be released hereby that may hereafter be asserted.

28.     Binding Effect: This Release and Settlement Agreement shall take effect to the benefit of, and be binding upon, the heirs, successors, assigns and legal representatives of the Parties and any third-party beneficiaries.

29.     Governing Law: This Release and Settlement Agreement is entered

into in Colorado and shall be governed by the laws of the State of Colorado, except as provided in § 17.

30.     Headings: The headings used in this Release and Settlement Agreement are for the convenience of the Parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Release and Settlement Agreement.

31.     Severability: If any provision of this Release and Settlement Agreement should be declared to be unenforceable, the remainder of this Release and Settlement Agreement shall continue to be binding upon the Parties.

32.     Advice of Counsel: Plaintiffs represent that (a) they have relied upon the advice of attorneys and/or other consultants of their own choice concerning the legal and federal, state and local tax consequences of this Release and Settlement Agreement, (b) this Release and Settlement Agreement has been thoroughly read by Plaintiffs or to them, and its terms have been explained to their satisfaction by an attorney or attorneys of its choice, and (c) the terms of this Release and Settlement Agreement, including its release of unasserted and unknown claims, are fully understood and voluntarily accepted by Plaintiffs. Plaintiffs further understand and agree that this Release and Settlement Agreement shall be forever binding and that no cancellation, rescission, or modification of, or release from the terms of, this Release and Settlement Agreement shall be made based upon any mistake of fact or of law.

33.     Execution in Counterparts: This Release and Settlement Agreement may be executed in counterparts, each of which shall have full force and effect upon execution by all Parties to this Release and Settlement Agreement, but which together shall constitute a single instrument.

34.     Execution by Electronic Signatures: This Release and Settlement Agreement may be executive by electronic signatures, which shall have full force and effect as if they were wet ink signatures.

**CAUTION: Read this before signing.  This is a release of your claims for attorneys' fees and costs, including attorneys' fees and costs for the future monitoring of the Settlement Agreement.**

**FOR PLAINTIFFS:**

_____

Brian Mackes

_____

Adrian Chávez

_____

National Federation of the Blind of Colorado

By:   Scott C. LaBarre

Its:   First Vice President

FOR THE COLORADO DEPARTMENT OF CORRECTIONS

BY: _____     Date: __06/28/2022__
     DEAN WILLIAMS (or designee)
     Executive Director

APPROVED AS TO FORM ONLY:


PHILIP J. WEISER
Attorney General

KATHLEEN SPALDING
Attorney for Defendants




FOX & ROBERTSON, PC

AMY F. ROBERTSON


CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
Pilar Gonzalez Morales


BROWN, GOLDSTEIN & LEVY, LLP
Eve L. Hill

Attorneys for Plaintiffs