**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01100-CNS-MEH

BRIAN CHRISTOPHER MACKES,
ADRIAN CHÁVEZ, and
NATIONAL FEDERATION OF THE BLIND OF COLORADO,

        Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS, and
DEAN WILLIAMS, in his official capacity as
Executive Director of CDOC,

        Defendants.

---

**MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION TO ENFORCE**

---

In August, 2022, the Parties to this case reached a Settlement Agreement, later approved and adopted by this Court, resolving claims that Defendant Colorado Department of Corrections ("CDOC") systematically discriminated against blind prisoners and denied them the auxiliary aids and services and equal opportunity required by Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Now, two years later, CDOC remains out of compliance with an array of material terms of that Settlement. Pursuant to the language of the Agreement and this Court's retention of jurisdiction, Plaintiffs respectfully move this Court to enforce the Agreement, appoint a third-party monitor to ensure compliance going forward, and award Plaintiffs their reasonable attorneys' fees and costs in connection with the enforcement process.

Plaintiffs brought this lawsuit because blind people in CDOC's custody had to rely on other prisoners to read their mail, fill out prison forms, understand their coursework and for a myriad of other daily and highly personal tasks, and because blind prisoners were excluded from programming and denied the accommodations they need to navigate their facilities. The 2022 Settlement was designed to remedy these violations. As explained below, Plaintiffs Brian Mackes and Adrian Chávez must continue to rely on others and continue to be excluded from programming – in direct violation of the Agreement and of the letter and spirit of the ADA and Section 504.

## FACTUAL BACKGROUND

In April 2021, two blind prisoners and the National Federation of the Blind of Colorado filed suit against CDOC under Title II of the ADA, 42 U.S.C. § 12131 *et seq*., and Section 504, 29 U.S.C. § 794, alleging that CDOC failed to provide necessary auxiliary aids and services to communicate effectively with blind prisoners and to ensure their equal treatment and opportunity. In 2022, the Parties reached a settlement providing comprehensive relief to blind prisoners in CDOC custody. On August 3, 2022, this Court approved the Parties' Release and Settlement Agreement, retained jurisdiction to enforce it, and dismissed the case with prejudice. Order Approving Joint Motion to Dismiss and Request to Retain Jurisdiction to Enforce Settlement Agreement ("Dismissal Order") at 1, ECF No. 77; ECF No. 77-1. The Parties executed an Amended Release and Settlement Agreement ("Agreement") in September 2022. *See* Ex. 1, Agreement. The goal of the Agreement was to provide blind prisoners with "private and independent access to information, processes, programs, and facilities available to sighted [p]risoners on an equal basis with sighted prisoners, consistent with legitimate security concerns." *Id.* ¶ 1.

I.      **Settlement Agreement Terms**

In furtherance of its primary goal, the Agreement mandates that CDOC provide blind

prisoners with certain assistive technology. CDOC must issue laptops equipped with screen

reader software to blind prisoners that permit access to Key Print Materials[1] in a screen-readable

format. *Id.* ¶ 4.a. CDOC is required to load Key Print Materials onto the laptops and to update

the materials as necessary. *Id.* The Agreement further requires CDOC to provide blind and print-

disabled prisoners with printers and scanners compatible with the accessible laptops. *Id.* ¶ 4.b.

CDOC must train blind and print-disabled prisoners to use any assistive technology, including

laptops, provided in accordance with the Agreement. *Id.* ¶ 15.a.

CDOC must provide blind prisoners with additional assistive devices that allow them

access to programs, activities, and printed materials, including portable scanners, digital

recorders, and talking or Braille watches.  *Id.* ¶ 5.b. Further, any new tablets or other technology

CDOC provides to the general prison population must be accessible to and usable by blind and

print-disabled prisoners. *Id.* ¶ 5.c. Blind and print-disabled prisoners may also request other

assistive technology, and CDOC must maintain a list of pre-approved assistive technologies. *Id.*

¶ 5.a.

CDOC is also required to ensure that blind prisoners have access equal to that of sighted

prisoners to certain written materials. Blind prisoners must have equal access to bulletin boards

and informational postings directed towards the general prison population, so CDOC must make

these postings available in large print on physical bulletin boards and available on the provided

laptops. *Id.* ¶ 4.f. Where providing print materials in an accessible format would be an undue

---

[1] Key Print Materials are defined as "printed materials provided by CDOC for regular or
repeated use among CDOC Prisoners or all Prisoners at a particular facility." Agreement ¶ 2.n.

burden or fundamental alteration, CDOC is required to assign either a case manager or Qualified

Offender Care Aide ("OCA") to assist the blind prisoners. *Id.* ¶ 4.h.

CDOC must also ensure that blind prisoners have access to talking books and eBooks

similar to sighted prisoners' access to physical books. *Id.* ¶ 5.d. Additionally, voluntary and

required educational programming available to sighted prisoners must be accessible to blind

prisoners. *Id.* ¶ 8.a. CDOC must ensure that tasks, formats, and assessments related to

educational programing are available to blind prisoners in the formats most suited to that blind

prisoner. *Id.*  If an educational program involves use of a computer, CDOC must ensure that

blind and print-disabled prisoners have access to appropriate assistive technology to complete

their courses. *Id.* ¶ 8.b.  Finally, blind prisoners must be given priority access to gym, recreation,

and meals. *Id.* ¶ 13.b.

The Agreement contemplates that CDOC may be excused from compliance only if a

measure required by the Agreement or requested by a blind or print-disabled prisoner "would

constitute a fundamental alteration, undue burden, or threat to security." *Id.* ¶ 14.a. In that case,

CDOC is required to document the issue "in writing, with supporting rationale," and

communicate the issue to the requesting prisoner and to the National Federation of the Blind of

Colorado. *Id.* The documentation must identify "any alternative actions to be taken that would

not result in such an alteration or such burdens." *Id.* ¶ 14.b. The Agreement requires CDOC to

consider all its resources before determining "that a measure would constitute an undue financial

burden." *Id.* ¶ 14.a.

In the event of a dispute over performance or interpretation, the Agreement provides that

the Parties shall undertake an informal dispute resolution process before seeking resolution in

this Court. *Id.* ¶ 17. The Parties may submit the dispute for juridical resolution if they are unable

to resolve the dispute informally within thirty days. *Id.* ¶ 17.a.iv. The Agreement states that this

Court retains jurisdiction to enforce the Agreement, and that Colorado law governs, except that

in resolving any dispute, the standards of Title II of the ADA and Section 504 apply. *Id.*

¶¶ 17.b.i–ii, 29.

## II.    Informal Dispute Resolution Process in 2023–2024

In April 2023, Plaintiffs initiated the informal dispute resolution process for the first time

because—over six months after the Agreement's effective date—CDOC had not distributed the

required laptops. *See* Ex. 2A Plaintiffs' Counsel Letter to CDOC Counsel (Apr. 13, 2023).

Plaintiffs' written notice invoking the informal dispute resolution process also informed CDOC

that Plaintiff Brian Mackes lacked a printer and scanner in violation of Paragraph 4.b. of the

Agreement. *Id.* CDOC responded in writing that it had provided laptops to three blind prisoners

in accordance with the agreement, and that it had provided a scanner and ordered a printer for

Mr. Mackes. Ex. 2B. CDOC Dispute Resolution Response (Apr. 27, 2023). CDOC explained

that delivery of the laptops had been delayed by a problem with all CDOC computers and by the

transfer of Mr. Chávez to a new facility. *Id.*

The Parties met and conferred in May 2023. Ex. 2, Decl. of Eve L. Hill ("Hill Decl.")

¶ 6. Plaintiffs' Counsel explained the deficiencies in CDOC's implementation of the Agreement,

and CDOC officials responded that they understood and were working on the issues but could

not provide an update on their progress. *Id.* Plaintiffs' Counsel received similarly unproductive

answers in regular meetings with CDOC officials from June to November 2023. *Id.* ¶ 7. Finally,

in December 2023, Plaintiffs' Counsel detailed CDOC's implementation deficiencies to

Adrienne Sanchez, CDOC's Director of Policy & Legislative Affairs. *Id.* ¶ 8. Ms. Sanchez stated

that she did not know any of the answers to the questions presented and could not provide an

update. *Id*. ¶ 9. She added that she needed to speak with James "Jim" Like from Colorado's Office of Information Technology ("OIT") about the issues with CDOC's implementation. *Id*.

In January and February 2024, CDOC cancelled meetings with Plaintiffs' Counsel, so Plaintiffs' Counsel did not meet again with CDOC staff until March 2024. *Id*. ¶ 10. Once again, CDOC staff could not answer any of the questions presented or provide an update as to progress, so Plaintiffs' Counsel asked to speak directly with Mr. Like. *Id*. ¶11. Plaintiffs' Counsel met with Mr. Like and opposing counsel the following day. Ex. 3, Decl. of Sanho Steele-Louchart ("Steele-Louchart Decl.") ¶ 5. After explaining the implementation deficiencies to Mr. Like and explaining that Ms. Sanchez directed Plaintiffs' Counsel to confer with him, Mr. Like informed Plaintiffs' Counsel that he was unaware that he was supposed to be assisting with implementing the Agreement, and that he did not believe anyone in the Office of Information Technology was working on it either. *Id*. ¶¶ 6-7 Given Mr. Like's confirmation that he was not working on implementation, Plaintiffs' Counsel met with Ms. Sanchez later in March 2024. Ex. 2, Hill Decl. ¶ 11. Ms. Sanchez expressed shock over the delay in implementation and said she had no good explanation. *Id*.

On April 22, 2024, Plaintiffs' Counsel wrote to CDOC, identifying the ways CDOC had violated and continued to violate the Agreement and again invoking the Agreement's dispute resolution process. The letter detailed how blind prisoners still lacked access to functioning accessible laptops, prison materials on their laptops, proper laptop training, printers, scanners, effective records, information posted on bulletin boards in an accessible format, appropriate support from OCAs, accessible books, and accessible tablets. Ex. 2C. Plaintiffs' Dispute Resolution Letter to CDOC Counsel (Apr. 22, 2024), at 2–5. Two weeks later, CDOC responded that it was able to "identify solutions for the alleged issues with laptops" and that Mr. Mackes

and Mr. Chávez already had scanners, although CDOC admitted it had not provided USB drives

so that Mr. Mackes and Mr. Chávez could use the scanners appropriately. Ex. 2D. CDOC

Dispute Resolution Response (May 6, 2024), at I–II. CDOC also stated that it would remedy the

printer and bulletin board issues, "consider other recorder options," investigate the OCA issue,

and ensure that the tablets distributed to prisoners would be accessible to and usable by blind and

print-disabled prisoners. *Id*. at III–V.

        In May 2024, Plaintiffs' Counsel met with CDOC to facilitate resolution of the

deficiencies explained in the April 2024 letter. Ex. 2, Hill Decl. ¶ 14. At the meeting, CDOC

agreed to remedy the implementation deficiencies by July 2, 2024. *Id.* On approximately May 9,

2024, Plaintiffs' Counsel wrote to CDOC memorializing the agreed-upon resolution and

explaining that if the deficiencies were not remedied by July 2, Plaintiffs' Counsel would

"consider the dispute resolution process to be exhausted" and "pursue enforcement in court." Ex.

2E. Plaintiffs' Letter to CDOC Counsel (May 9, 2024).

        CDOC did not meet the agreed-upon July 2 deadline. Ex. 2F. Email from Eve Hill to

CDOC Counsel (July 11, 2024). Later in July, CDOC led Plaintiffs' Counsel to believe that steps

were being taken to comply with the settlement agreement. Ex. 2G. Email from R. Lieb to

Plaintiffs' Counsel (July 12, 2024); Ex. 2H. Email from P. Barrett to Plaintiffs' Counsel (July 19,

2024). CDOC stated that it had provided Plaintiffs Brian Mackes and Adrian Chávez with access

to printers, removed metal plates that had prevented Mackes from plugging flash drives and USB

cords into his scanner, and gave Chávez access to his scanner that had previously been denied.

Plaintiffs' counsel responded by email on July 16 and 23, 2024. Ex. 2I. Eve Hill email to CDOC

counsel (July 16, 2024); Ex. 2J. Eve Hill email to CDOC counsel (July 23, 2024). Throughout

August and September, Plaintiffs' Counsel continued to communicate with CDOC regarding the

remaining deficiencies in their implementation of the settlement agreement. Ex. 2. Hill Decl. ¶ 17; Ex. 2K. Email from P. Barrett to Plaintiffs' counsel (Aug 2, 2024). Plaintiffs' counsel informed CDOC counsel on September 17, 2024, of continuing violations of the Agreement and provided a deadline of October 1, 2024. Ex. 2L. Plaintiffs' letter to CDOC counsel (Sept. 17, 2024). CDOC counsel requested an extension, provided only a partial response on October 8, 2024, and finally responded on October 14, 2024. Ex. 2M. Email from P. Barrett to Plaintiffs' Counsel (Sept. 17, 2024); Ex. 2N. Email from P. Barrett to Plaintiffs' Counsel (Oct 8, 2024); Ex. 2O. Email from P. Barrett to Plaintiffs' counsel (Oct 14, 2024).

As of the date of this motion, significant implementation deficiencies remain. Despite Plaintiffs' Counsel's efforts to resolve the dispute without litigation—by meeting and conferring numerous times since April 2023 and explaining the implementation deficiencies to CDOC in detail—CDOC remains out of compliance with the Settlement Agreement and falls far short of providing Plaintiffs with equally effective communication and access to its programs and services.

## III.    Deficiencies with CDOC's Implementation of the Agreement

CDOC remains out of compliance with a number of provisions of the Agreement. Although Mr. Mackes and Mr. Chávez received laptops in April 2023, the devices have been plagued by technical issues that render them nearly unusable. One of the laptops' most critical capabilities is screen-reader software, which should allow prisoners to access Key Print Materials. But the Dell laptops purchased by CDOC are unable to operate the screen-reader software without crashing the operating systems. Ex. 4. Decl. of Brian Mackes ("Mackes Decl.") ¶ 5. Mr. Mackes has been able to stop the crashing issue by refreshing his screen reader every few minutes, but this practice is so tedious and time-consuming that he has ceased using his laptop altogether. *Id*. ¶ 6. The laptop matter is especially pressing because Mr. Mackes began

taking college courses in September 2024, which he struggles to complete without a functioning and accessible laptop. *Id*. ¶¶ 16-17. In October 2024, Mr. Mackes was finally given a new laptop, but it does not function and CDOC staff keep taking it back to fix technical issues. *Id.* ¶ 8.

CDOC is also failing to make educational programing available and accessible to blind prisoners. Mr. Chávez was denied the opportunity to take classes that are offered to all prisoners. Ex. 5. Decl. of Adrian Chávez ("Chávez Decl.") ¶¶ 4-7. When he applied to take culinary, carpentry, welding, and foundations in computer technology classes, CDOC told Mr. Chávez that he would pose a safety risk in those classes because of his blindness. *Id*. ¶ 4-5. After CDOC denied him access to the classes he requested first, Mr. Chávez applied to take psychology and paralegal studies. *Id*. ¶ 6. Although he asked about accommodations for these classes months ago, CDOC staff has not responded to his requests for accommodations. *Id*. ¶ 7. Therefore, Mr. Chávez has been unable to take any classes through the correctional facility. *Id*. ¶¶ 4-7.

CDOC failed to grant Mr. Mackes equal access to his college courses. He still does not have accessible textbooks required for his courses, and while CDOC provided him with a Chromebook to complete his schoolwork, he received delayed and inadequate training on the Chromebook and its built-in screen reader. Ex. 4. Mackes Decl. ¶¶ 9-13. The Accessible Technology trainer contracted by CDOC cannot work with Mr. Mackes in person, and CDOC does not permit her remote access to the Chromebook, making it impossible for the trainer to view his screen or observe how Mr. Mackes is interacting with the machine in order to teach him. *Id*. ¶ 13. CDOC allowed another assistive technology trainer to sit in on Mr. Mackes' lessons on the Chromebook, but since his training did not begin until September, Mackes fell behind in his courses and was not able to access class materials until mid-October. *Id*. ¶¶ 13-17.

Mr. Mackes still does not have accessible electronic textbooks and must ask other prisoners to read for him. *Id*. ¶ 14.

Even if the laptops worked as the Agreement requires, CDOC has failed to provide and update Key Print Materials on the laptops, and blind prisoners have received either no training or woefully inadequate training. Mr. Chávez's laptop is programmed to restrict him from opening PDF files, which means he cannot access administrative regulations, CDOC's rules, memoranda, and other Key Print Materials. Ex. 5. Chávez Decl. ¶¶ 10-11. Mr. Chávez received no training between August 2023 and July 31, 2024, so he was denied any access during that time. *Id*. ¶ 9.

It took CDOC fifteen months after assuring Plaintiffs' Counsel that Mr. Mackes's printer had "been ordered" for Mr. Mackes to gain printer access. *see* Ex. 2B. CDOC Dispute Resolution Response (Apr. 27, 2023) at 2; Ex. 2C. Plaintiffs' Dispute Resolution Letter to CDOC Counsel (Apr. 22, 2024) at 3. Mr. Chávez and Mr. Mackes have scanners, but they are functionally useless, as they cannot use the scanners to transfer printed material to their laptops. Ex. 4. Mackes Decl. ¶¶ 21-24; Ex. 5. Chávez Decl. ¶¶ 12-16. Blind prisoners should be able to use the laptops to draft and print hard copies of letters, legal documents, communications to CDOC staff and third parties, and more. In addition, blind prisoners should have the ability to scan printed mail and other documents and run them through an optical character recognition program that will turn the documents into accessible text. Without scanner access, blind and print-disabled prisoners lack equal access as sighted prisoners to their legal communications, familial communications, and postings and notices by CDOC staff, as well as access to government programs such as activities and classes.

Blind prisoners still do not have access to regular postings, and interim measures to allow blind prisoners to access printed materials have been ineffective. CDOC provided Mr. Mackes

and Mr. Chávez with the daily postings once and never again. Ex. 4. Mackes Decl. ¶ 28; Ex. 5.

Chávez Decl. ¶ 18. However, these postings were formatted with columns, tables, highlighting,

and handwritten additions, rendering it impossible for Mr. Mackes and Mr. Chávez to read them

with their assistive technology. *Id*. Mr. Mackes has a wearable assistive device to access physical

bulletin board postings and general postings within CDOC's facilities. Ex. 4. Mackes Decl. ¶¶

25-26. To use it, Mr. Mackes must aim a laser beam at printed material so that the device can

read the material aloud. *Id*. ¶ 27.  CDOC, however, frequently changes the formatting and

physical positioning of the printed postings in its bulletin board cabinets. *Id*. As a result, Mr.

Mackes lacks equal access to the postings because the constant changing of where he needs to

aim the device leads to the device reading from the middle of a posting rather than the beginning.

*Id*.

In some cases, CDOC has provided blind and print-disabled prisoners with an OCA to

access posted materials. The OCAs have proven ineffective. Although the Agreement defines an

OCA as having both "a GED or high school diploma" and the ability "to read and write

effectively, accurately, and impartially," Ex. 1. Agreement ¶ 2.p., some OCAs lack adequate

literacy skills to assist blind prisoners. Ex. 4, Mackes Decl. ¶¶ 29-30. Other OCAs have

exhibited apathetic and uncaring attitudes to blind and print-disabled prisoners when asked to

read postings and important notices, which suggests the OCAs have received inadequate training

under Paragraph 15.b. Ex. 5. Chávez Decl. ¶¶ 40-44. As a result, blind and print-disabled

prisoners lack equal access to the materials in CDOC's bulletin board cabinets and other general

postings in violation of the Agreement.

CDOC's provision of other assistive devices has proven unsuccessful as well. Mr.

Mackes has a recorder device that he requested to complete educational coursework. CDOC

recommended that Mr. Mackes dictate his assignments on the recorder, submit the recorder to the professor, and receive feedback on his assignments using the recorder. Ex, 4. Mackes Decl. ¶¶ 31-32. CDOC provided a recorder in August but failed to configure it to allow Mr. Mackes to use most of its functions, such as accessing the recorder's file system. *Id*. Although the recorder has now been set up to allow Mr. Mackes access to its functions, his inability to access the recorder contributed to him falling behind in his courses. *Id.* ¶ 32. Mr. Mackes currently has intermittent access to his recorder because CDOC staff has not provided him with a rechargeable battery and does not resupply him with batteries in a timely manner. *Id*. ¶ 33. CDOC's failure to provide Mackes with batteries causes him to lack access to the recorder for at least three days out of the week. *Id*.

Mr. Chávez requested a stopwatch to use during his recreation time. Ex. 5. Chávez Decl. ¶ 19. Instead of ordering him an accessible talking or tactile watch, CDOC gave him a flat kitchen timer, which is inaccessible and useless for counting laps and exercise sets. *Id*. ¶ 20. Further, a CDOC official told Mr. Chávez in April 2024 that he would be required to buy his own talking watch despite the mandate of Paragraph 5.b of the Settlement that one would be provided. *Id*. ¶ 21.

Sighted prisoners have access to law libraries where they can conduct legal research independently. However, the law library computers lack screen-reader software that would allow Mr. Chávez and Mr. Mackes to access legal sources. *Id*. ¶¶ 23-24; Ex. 4. Mackes Decl. ¶ 56. Even though Mr. Chávez, Mr. Mackes, opposing counsel, and the assistive technology trainer employed by CDOC told CDOC staff that Dragon Naturally Speaking, the dictation software on the law library computers, was not a screen reader, CDOC's ADA Coordinator continued to insist that Mackes and Chávez use this software that could not give them access to the library

system. Ex. 4. Mackes Decl. ¶ 56; Ex. 5. Chávez Decl. ¶¶ 24-26; Ex. 3. Steele-Louchart Decl. ¶

14; Ex. 2L Plaintiffs' Letter to CDOC Counsel (Sept. 17, 2024).

CDOC recently rolled out tablets to all prisoners, but these tablets are not fully accessible

to blind prisoners. Ex. 4. Mackes Decl. ¶ 34; Ex. 5. Chávez Decl. ¶ 27. The tablets run an

Android operating system with a screen reader that does not allow blind prisoners full access to

the features and apps on the device. Ex. 4. Mackes Decl. ¶¶ 35-37; Ex. 5. Chávez ¶¶ 28-29.

Although the tablets feature language-learning apps, math tutorials, and other learning materials,

blind prisoners' access to these features is inconsistent and unreliable. Ex. 4. Mackes Decl. ¶¶

36-37; Ex. 5. Chávez Decl. ¶¶ 29-32. In addition, the keyboards provided with these tablets are

not configured for blind prisoners to use effectively. Ex. 4. Mackes Decl. ¶ 39; Ex. 5. Chávez

Decl. ¶ 33. Both Mr. Mackes and Mr. Chávez have requested training on the tablets, and neither

has received it. Ex. 4. Mackes Decl. ¶ 38; Ex. 5. Chávez Decl. ¶ 34.

Additionally, blind and print-disabled prisoners within CDOC currently have the same

limited access to books today that they had when the litigation started, notwithstanding the

Agreement's requirement that they have access similar to sighted prisoners. Ex. 4. Mackes Decl.

¶¶ 53-55; Ex, 5. Chávez Decl. ¶¶ 35-39. CDOC still only provides access to the Colorado

Talking Book Library, which was the case before this suit; Paragraph 5.d. of the Agreement was

intended to expand this limited pool to be equivalent to the greater range of books available to

sighted prisoners.  In various conferral sessions over the past year, Plaintiffs' Counsel have

provided CDOC with several options for offering accessible books to blind prisoners, including:

(1) Bookshare, an accessible online library service that costs only $70 annually for an

organization; (2) Project Gutenberg, a completely free library of accessible eBooks; and

(3) National Library Service, a free talking-book library service for blind and print disabled

individuals. Ex. 3. Steele-Louchart Decl. ¶ 12. Despite the minimal work and cost of

implementing these suggestions, CDOC has taken no steps to provide blind prisoners access to

books. *Id*. ¶ 13; Ex. 5. Chávez Decl. ¶ 37-38. Further, even when prisoners ask if their families

can buy them accessible books, CDOC staff refuses, citing security concerns. Ex. 4. Mackes

Decl. ¶ 55; Ex. 5. Chávez Decl. ¶ 39. Sighted prisoners may receive books from friends and

family if ordered directly from an "approved source" such as a publisher or book retailer, AR

330-38, ¶¶ II(A), IV(C)(7)(b)(1).[2] this is apparently not an option for blind prisoners.

     The Agreement requires CDOC to give priority to blind prisoners so they can navigate to

and exit from meals and activities safely. Ex. 1. Agreement ¶ 13.b. While this occurred for a

time, Mr. Mackes has stopped receiving priority at mealtimes. Ex. 4. Mackes Decl. ¶¶ 40-42, 47.

Diabetic prisoners are permitted priority access to meals, and Mr. Mackes has requested to join

that group. *Id*. ¶¶ 41-42. CDOC staff has refused this request, instead stating that he may walk

with the first ordinary, non-medical group called to meals. *Id*. ¶ 48. However, since Mr. Mackes

is never told which group will be called first or where that group will be congregating, he cannot

enter with enough time to find a seat before crowds of prisoners fill the tight confines of the

dining hall. *Id*. ¶ 49. As a result, Mr. Mackes fears for his safety as he navigates the crowded

prison cafeteria, jostling other prisoners and unintentionally hitting them with his cane, as he

attempts to find food and a place to sit. *Id*. ¶ 43. Mr. Mackes required medical treatment twice

because he was injured while searching for a seat in the crowded dining hall. *Id*. ¶ 45. CDOC

staff told both Mr. Mackes and Mr. Chávez that printed lists of their accommodations would be

required for them to receive priority access for meals. Ex. 4. Mackes Decl. ¶¶ 47-48; Ex. 5.

Chávez Decl. ¶ 48. However, Mr. Mackes requested a printed accommodations list and never

---

[2] https://drive.google.com/file/d/1pc4XM1kBW0O40qjXmUZiQx2oAo3FwSoO/view.

received it, and Mr. Chávez acquired his list but was told his accommodations could not be
verified. *Id*. Mr. Chávez has also been denied priority access to meals and often has to navigate
to and from meals with the assistance of OCAs. Ex. 5. Chavez Decl. ¶¶ 47-49. He risks injury
when navigating to meals without priority or assistance. *Id.* ¶¶ 49-50. CDOC staff does not allow
this, and have threatened to write him up or take away his accommodations when they see him
traveling without his OCA's assistance. Ex. 5, Chávez Decl. ¶¶ 45-46. Mr. Mackes has also been
denied priority access to recreation, which makes it impossible for him to access the equipment.
Ex. 4. Mackes Decl. ¶¶ 50-52.

Mr. Chávez has also been denied accessible materials required to participate in prison
programming. *Ex. 4. Ch*ávez Decl. ¶¶ 51-52.

Finally, the agreement states that CDOC must evaluate and accommodate prisoners at
intake and upon request. Ex. 1. *Agreement* ¶ 3.a. Plaintiffs' Counsel has repeatedly requested that
CDOC evaluate a short list of prisoners who may need accommodations due to blindness. Ex. 2I.
email from Eve Hill to CDOC Counsel (July 16, 2024). CDOC has declined to inform Plaintiffs'
Counsel regarding whether it has evaluated these individuals or provided them with
accommodations. Ex. 2K. Email from P. Barrett to Plaintiffs' Counsel (Aug. 2, 2024).

Over two years after the Agreement's execution, blind prisoners are not much better off
than they were when the Complaint was filed. CDOC has never invoked Paragraph 14.a. of the
agreement or otherwise provided documentation that a measure mandated by the Agreement or
requested by a blind prisoner would constitute a fundamental alteration, undue burden, or threat
to security. Ex. 2. Hill Decl. ¶ 26; Ex. 3. SteeleLouchart Decl. ¶ 17. To the contrary, counsel for
CDOC have been promising to comply in various communications over the past year and a half.
Given that blind prisoners are no closer to receiving effective communication and equal access to

CDOC's programs and services, judicial enforcement of the Agreement is the only remaining option.

The chart attached as Exhibit 6 to this Motion summarizes the requirements of the Agreement and CDOC's violations.

## ARGUMENT

This Court expressly retained jurisdiction over the Agreement, Dismissal Order at 1 (citing Ex. 1, Agreement ¶ 18). CDOC has materially breached the Agreement and has not indicated at any time that its breach was due to a required measure constituting a fundamental alteration, undue burden, or threat to security. CDOC has made little progress in implementing the Agreement over two years after its execution, and such breach vests the Court with power to enforce the Agreement.

Plaintiffs respectfully request that the Court order CDOC to comply, appoint a third-party monitor to ensure compliance, and award Plaintiffs their reasonable attorneys' fees and costs.

## I.    Legal standards.

This Court has jurisdiction to enforce the Settlement Agreement. The Court incorporated its terms and conditions into an order and retained jurisdiction to enforce the Agreement. Dismissal Order at 1. District courts "retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement." *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). A breach of a settlement agreement constitutes a violation of the order of dismissal, which vests the court with "ancillary jurisdiction to enforce the agreement." *Kendall State Bank v. Archway Ins. Servs., LLC*, Civ. No. 10-2617-KHV, 2015 WL 12733382, at *3 (D. Kan. June 23, 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

"A settlement agreement is a contract which will be construed using ordinary principles of contract interpretation." *Carlson v. Colorado Center for Reproductive Medicine, LLC*, No. 21-cv-01528-RMR-MEH, 2022 WL 18777081, at *2 (D. Colo., Dec. 21, 2022) (citing *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993)). "To prove breach of contract under Colorado law, a plaintiff must establish (1) the existence of a contract, (2) performance of the contract by the plaintiff, (3) breach of a material term of the contract by the defendant, and (4) resulting damages. *Interstate Restoration, LLC v. Zurich Am. Ins. Co.*, No. 21-CV-01380-NYW-JPO, 2024 WL 943356, at *13 (D. Colo. Mar. 5, 2024) (citing *Dorsey & Whitney LLP v. RegScan, Inc.*, 488 P.3d 324, 334 (Colo. App. 2018)). A "material" contract term under Colorado law is a term that "goes to the root of the matter or essence of the contract" and "must be assessed in the context of the expectations of the parties at the time the contract was formed." *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 43 (Colo. App. 2022) (citation omitted). "Whether there has been a material breach" of a settlement agreement "turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance." *Id.* (citation omitted). Where a settlement agreement provides no set time for performance, "'the law implies a reasonable time,' measured by the circumstances of the case." *Id.* (quoting *Ranta Constr. Inc. v. Anderson*, 190 P.3d 835, 841 (Colo. App. 2008)).

The language of the Agreement itself makes clear that CDOC is in material breach of its terms. Its first paragraph sets forth the "Goal: That Blind Prisoners will have private and independent access to information, processes, programs, and facilities available to sighted Prisoners on an equal basis with sighted prisoners, consistent with legitimate security concerns." Ex. 1, Agreement ¶ 1; *see also generally id.* ¶ 3 ("Ensuring Equal Access").

In addition, the Agreement specifies that, "[i]n resolving [a] dispute, the Court will apply the standards of Title II and Section 504." *Id*. ¶ 17(b)(ii). Title II of the ADA prohibits CDOC from denying prisoners the opportunity to participate in or benefit from its programs, services, and activities, affording them unequal access to opportunities afforded others, and otherwise limiting them in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others. 28 C.F.R. § 35.130(b)(1)(i), (ii), (vii). Title II specifically requires CDOC to ensure that communications with blind people "are as effective as communications with others," 28 C.F.R. § 35.160(a)(1), and to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity," *id*. § 35.160(b)(1). In determining what types of auxiliary aids and services are necessary, CDOC is required to "give primary consideration to the requests of individuals with disabilities." *Id*. § 35.160(b)(2). "Primary consideration" means that CDOC must honor the request unless it can demonstrate that another equally effective means of communication is available, or that use of the requested means would result in a fundamental alteration in the service, program, or activity or in undue financial and administrative burdens. U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, § II-7.1100 (1993). (https://archive.ada.gov/taman2.html#II-7.1100).

## II.    CDOC is in breach of the Agreement and Title II and Section 504.

The violations described above establish that CDOC is in material breach of the Agreement and of Title II and Section 504. Blind prisoners do not have functional laptops with Key Print Materials and bulletin board materials nor do they have scanners that permit them to read and draft documents independently. They do not have access to useable tablets or the range of books available to sighted prisoners. Both individual Plaintiffs have been denied educational

opportunities and accessible class materials. And blind prisoners lack the training necessary to use the limited technology they have been provided.

CDOC has had two years to implement the Agreement, including over a year of regular meetings with Plaintiffs' Counsel in which Plaintiffs' Counsel detailed the implementation deficiencies. Despite these ample discussions and warnings, CDOC remains out of compliance.

### III. None of the remedies Plaintiffs seek would constitute a fundamental alteration, undue burden, or threat to security.

The Agreement excuses CDOC from performance only where a measure required by the Agreement or requested by a blind prisoner would result in "a fundamental alteration, undue burden, or threat to security." Ex. 1, Agreement ¶ 14.a. At no time during the extensive meet and confer process preceding this motion did CDOC express that implementing any portion of the Agreement would be a fundamental alteration, undue burden, or threat to security. Ex. 2, Hill Decl. ¶ 26; Ex. 3, Steele-Louchart ¶ 17. In any event, CDOC has never provided the required written documentation to the National Federation of the Blind of Colorado and the requesting prisoner. Ex. 1, Agreement ¶ 14.a. CDOC cannot now evade responsibility for its implementation failures by claiming, for the first time, that they would be excusable under Paragraph 14.a. *Id*.

### IV. Blind and print-disabled prisoners should not have to pay the price for CDOC's delay, and this Court should order compliance with the Agreement.

Given CDOC's material breach, Plaintiffs request that the Court exercise its enforcement power by ordering CDOC to comply with the Agreement. The order should specify that continued noncompliance may result in contempt. *See Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (explaining that a judicial order "compelling obedience" with a settlement agreement is sufficient to render the settlement agreement "enforceable through contempt" (citations omitted)). Plaintiffs also ask the Court to ensure that

CDOC does not continue to shirk its responsibilities to implement the Agreement while blind prisoners lack equally effective communication and access to CDOC's programs and services. To that end, Plaintiffs request that the Court appoint a third-party monitor, at CDOC's expense, to ensure CDOC proceeds apace and complies as quickly as possible.

Finally, the Agreement provides that, should Plaintiffs prevail on this motion to enforce, they are entitled to their attorneys' fees and costs. Agreement ¶ 17.b.iii (incorporating by reference 42 U.S.C. § 12205). Plaintiffs respectfully request the opportunity to file a fee petition should the Court rule in their favor on this motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court exercise its power to order CDOC to comply with the Agreement, install a third-party monitor to ensure compliance, and award Plaintiffs attorneys' fees.

BROWN, GOLDSTEIN & LEVY, LLP

_____*/s/ Eve L. Hill*_____
Eve L. Hill
120 Baltimore Street, Suite 2500
Baltimore, Maryland 21202
410-962-1030
ehill@browngold.com

FOX & ROBERTSON, PC
Amy F. Robertson
1 Broadway, Suite B205
Denver, CO 80203
303-951-4164
arob@foxrob.com

Dated: November 25, 2024                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following individuals at the following email addresses:

>Phillip Barrett
>Philip.Barrett@coag.gov
>
>Rachel Lieb
>Rachel.Lieb@coag.gov

>_Denise M. Altobelli_
>Denise M. Altobelli
>Paralegal Manager
>Brown, Goldstein & Levy, LLP