**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01100-CNS-MEH

BRIAN CHRISTOPHER MACKES,
ADRIAN CHÁVEZ, and
NATIONAL FEDERATION OF THE BLIND OF COLORADO,

      Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS, and
DEAN WILLIAMS, in his official capacity as
Executive Director of CDOC,

      Defendants.

**MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION TO ENFORCE**

In 2022, the Parties reached a Settlement Agreement ("Agreement"), later approved and adopted by this Court, resolving claims that the Colorado Department of Corrections ("CDOC") discriminated against blind prisoners and denied them the auxiliary aids and services and equal opportunity required by Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Two years later, CDOC remains out of compliance with that Agreement. Plaintiffs respectfully move this Court to enforce the Agreement, appoint a monitor to ensure compliance going forward, and award Plaintiffs reasonable attorneys' fees and costs.

Plaintiffs brought this lawsuit because blind people in CDOC's custody had to rely on other prisoners to read their mail, fill out prison forms, understand their coursework and for a myriad of other daily and highly personal tasks, and because blind prisoners were excluded from programming. The Agreement was designed to remedy

these violations. As explained below, Plaintiffs Brian Mackes and Adrian Chávez still must continue to rely on others and continue to be excluded from programming – in direct violation of the Agreement and of the letter and spirit of the ADA and Section 504.

## FACTUAL BACKGROUND

In April 2021, two blind prisoners and the National Federation of the Blind of Colorado (NFBCO) sued CDOC under Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504, 29 U.S.C. § 794, alleging that CDOC failed to provide auxiliary aids and services to communicate effectively with blind prisoners and to ensure their equal treatment and opportunity. In 2022, the Parties reached a settlement providing comprehensive relief to blind prisoners. On August 3, 2022, this Court approved the Parties' Release and Settlement Agreement, retained jurisdiction to enforce it, and dismissed the case with prejudice. Order Approving Joint Mot. to Dismiss and Req. to Retain Jurisdiction to Enforce Settlement Agreement ("Dismissal Order") at 1, ECF No. 77; ECF No. 77-1. The Parties executed an Amended Release and Settlement Agreement in September 2022. *See* Ex. 1. The Agreement's goal was to provide blind prisoners with "private and independent access to information, processes, programs, and facilities available to sighted [p]risoners on an equal basis with sighted prisoners, consistent with legitimate security concerns." *Id.* ¶ 1.

### I. Settlement Agreement Terms

The Agreement mandates that CDOC provide blind prisoners with assistive technology. CDOC must issue laptops equipped with screen reader software to blind

prisoners that permit access to Key Print Materials[1] in a screen-readable format. *Id.* ¶ 4.a. CDOC must load Key Print Materials onto the laptops and update them as necessary. *Id.* The Agreement further requires CDOC to provide blind prisoners with printers and scanners compatible with the laptops. *Id.* ¶ 4.b. CDOC must train blind prisoners to use the assistive technology, including laptops. *Id.* ¶ 15.a. CDOC must also provide blind prisoners with additional assistive devices that allow them access to programs, activities, and materials, including portable scanners, digital recorders, and talking watches. *Id.* ¶ 5.b. Further, any new tablets or other technology CDOC provides to the general prison population must be accessible to blind prisoners. *Id.* ¶ 5.c.

CDOC is also required to ensure blind prisoners have equal access to written materials, including bulletin boards and informational postings. *Id.* ¶ 4.f. Where providing print materials in an accessible format would be an undue burden or fundamental alteration, CDOC is required to assign either a case manager or Qualified Offender Care Aide ("OCA") to assist the blind prisoners. *Id.* ¶ 4.h.

CDOC must also ensure that blind prisoners have access to talking books and eBooks similar to sighted prisoners' access to books. *Id.* ¶ 5.d. Additionally, educational programming available to sighted prisoners must be accessible to blind prisoners. *Id.* ¶ 8.a. If an educational program involves use of a computer, CDOC must ensure blind prisoners have assistive technology to complete their courses. *Id.* ¶ 8.b. Finally, blind prisoners must be given priority access to gym, recreation, and meals. *Id.* ¶ 13.b.

The Agreement contemplates that CDOC may be excused from compliance only

---

[1] Key Print Materials are defined as "printed materials provided by CDOC for regular or repeated use among CDOC Prisoners or all Prisoners at a particular facility." Agreement ¶ 2.n.

3

if a measure "would constitute a fundamental alteration, undue burden, or threat to security." *Id.* ¶ 14.a. In that case, CDOC is required to document the issue "in writing, with supporting rationale," and communicate the issue to the requesting prisoner and to NFBCO. *Id.* The documentation must identify "any alternative actions to be taken that would not result in such an alteration or such burdens." *Id.* ¶ 14.b. The Agreement requires CDOC to consider all its resources before determining "that a measure would constitute an undue financial burden." *Id.* ¶ 14.a.

In the event of a dispute over performance or interpretation, the Agreement requires the Parties to undertake a dispute resolution process before seeking resolution in this Court. *Id.* ¶ 17. The Parties may submit the dispute for judicial resolution if they are unable to resolve it within thirty days. *Id.* ¶ 17.a.iv. This Court retains jurisdiction to enforce the Agreement, and Colorado law governs, except that in resolving any dispute, the standards of Title II of the ADA and Section 504 apply. *Id.* ¶¶ 17.b.i–ii, 29.

## II. Informal Dispute Resolution Process in 2023–2024

In April 2023, Plaintiffs initiated the informal dispute resolution process for the first time because—over six months after the Agreement's effective date—CDOC had not distributed the required laptops. *See* Ex. 2A Pls.' Counsel Letter to CDOC Counsel (Apr. 13, 2023). Plaintiffs' written notice also informed CDOC that Plaintiff Brian Mackes lacked a printer and scanner in violation of Paragraph 4.b. *Id.* CDOC responded that it had provided laptops to three blind prisoners, and that it had provided a scanner and ordered a printer for Mr. Mackes. Ex. 2B. CDOC Dispute Resolution Resp. (Apr. 27, 2023). CDOC explained that delivery of the laptops had been delayed. *Id.*

The Parties met and conferred in May 2023. Ex. 2, Decl. of Eve Hill ¶ 6. Plaintiffs' Counsel explained the deficiencies in CDOC's implementation of the Agreement, and

4

CDOC officials responded that they understood and were working on the issues but could not provide an update on their progress. *Id*. Plaintiffs' Counsel received similarly unproductive answers in regular meetings with CDOC officials from June to November 2023. *Id*. ¶ 7. Regular meetings with Adrienne Sanchez, CDOC's Director of Policy and Legislative Affairs, yielded similar results. Ms. Sanchez could not answer Plaintiffs' questions, did not know the reason for the delay in implementation and stated that James (Jim) Like from the Office of Information Technology was implementing the Agreement. *Id.* ¶¶ 8-10. When Plaintiffs' counsel met with CDOC in March 2024, Plaintiffs' Counsel asked to speak with Mr. Like. *Id*. ¶ 11. Plaintiffs' Counsel met with Mr. Like and opposing counsel the following day. Ex. 3, Decl. of Sanho Steele-Louchart ("Steele-Louchart Decl.") ¶ 5. Mr. Like informed Plaintiffs' Counsel that he was unaware that he was supposed to be implementing the Agreement, and that he did not believe anyone in the Office of Information Technology was working on it. *Id*. ¶¶ 6-7.

On April 22, 2024, Plaintiffs' Counsel wrote to CDOC, identifying the ways CDOC was violating the Agreement and again invoking the dispute resolution process. The letter detailed how blind prisoners still lacked access to functioning accessible laptops, prison materials on their laptops, proper laptop training, printers, scanners, effective records, information posted on bulletin boards, appropriate support from OCAs, accessible books, and accessible tablets. Ex. 2C. Pls.' Dispute Resolution Letter to CDOC Counsel (Apr. 22, 2024), at 2–5. CDOC responded that it was able to "identify solutions for the alleged issues with laptops" and that Mr. Mackes and Mr. Chávez already had scanners, although CDOC admitted it had not provided USB drives so that they could use the scanners. Ex. 2D. CDOC Dispute Resolution Resp. (May 6, 2024), at

5

I–II. CDOC also stated that it would remedy the printer and bulletin board issues, "consider other recorder options," investigate the OCA issue, and ensure that the tablets distributed to prisoners would be accessible to blind prisoners. *Id*. at III–V.

In May 2024, Plaintiffs' Counsel met with CDOC regarding the April 2024 letter. Ex. 2, ¶ 14. CDOC agreed to remedy the implementation deficiencies by July 2, 2024. *Id.*; Ex. 2E. Pls.' Letter to CDOC Counsel (May 9, 2024). CDOC did not meet the July 2 deadline. Ex. 2F. Hill Email to CDOC Counsel (July 11, 2024). Later in July, CDOC led Plaintiffs' Counsel to believe they were taking steps to comply with the settlement agreement. Ex. 2G. Lieb Email to Pls.' Counsel (July 12, 2024); Ex. 2H. Barrett Email to Pls.' Counsel (July 19, 2024). CDOC stated that it had provided Plaintiffs with printers, removed metal plates that had prevented Mackes from plugging flash drives and USB cords into his scanner, and gave Chávez access to his scanner. Plaintiffs' counsel responded by email on July 16 and 23, 2024. Ex. 2I. Hill email to CDOC counsel (July 16, 2024); Ex. 2J. Hill email to CDOC counsel (July 23, 2024). Throughout August and September, Plaintiffs' Counsel continued to communicate with CDOC regarding the deficiencies in their implementation of the Agreement. Ex. 2, ¶ 17; Ex. 2K. Barrett Email to Pls.' counsel (Aug 2, 2024). Plaintiffs' counsel informed CDOC counsel on September 17 of continuing violations of the Agreement and provided a deadline of October 1. Ex. 2L. Pls.' letter to CDOC counsel (Sept. 17, 2024). CDOC requested an extension, provided a partial response on October 8, and finally responded on October 14, 2024. Ex. 2M. Barrett Email to Pls.' Counsel (Sept. 17, 2024); Ex. 2N. Barrett Email to Pls.' Counsel (Oct 8, 2024); Ex. 2O. Barrett Email to Pls.' counsel (Oct. 14, 2024).

As of the date of this motion, significant implementation deficiencies remain.

Despite Plaintiffs' efforts to resolve the dispute without litigation, CDOC remains out of compliance and falls far short of providing Plaintiffs with equally effective communication and access to its programs and services.

### III.     Deficiencies with CDOC's Implementation of the Agreement

CDOC remains out of compliance with the Agreement. Although Mr. Mackes and Mr. Chávez received laptops in April 2023, the devices have been plagued by technical issues that render them nearly unusable. One of the laptops' most critical capabilities is screen-reader software, which should allow prisoners to access Key Print Materials. But the laptops purchased by CDOC are unable to operate the screen-reader software without crashing the operating systems. Ex. 4. Decl. of Brian Mackes ¶5.  Mr. Mackes can stop the crashing by refreshing his screen reader every few minutes, but this practice is so tedious and time-consuming that he has ceased using his laptop altogether. *Id*. ¶ 6. In October 2024, Mr. Mackes was finally given a new laptop, but it does not function and CDOC staff keep taking it back to fix technical issues. *Id*. ¶ 8.

CDOC is also failing to make educational programing available and accessible to blind prisoners. Mr. Chávez was denied the opportunity to take classes that are offered to all prisoners. Ex. 5. Decl. of Adrian Chávez ¶¶ 4-7. When he applied to take culinary, carpentry, welding, and foundations in computer technology classes, CDOC told Mr. Chávez that he would pose a safety risk because of his blindness. *Id*. ¶ 4-5. After CDOC denied him access to these classes, Mr. Chávez applied to take psychology and paralegal studies. *Id*. ¶ 6. Although he asked about accommodations for these classes months ago, CDOC staff has not responded to his requests. *Id*. ¶ 7.

CDOC failed to grant Mr. Mackes equal access to his college courses. He still does not have accessible textbooks required for his courses, and while CDOC provided

7

him with a Chromebook to complete his schoolwork, he received delayed training on the Chromebook and its built-in screen reader. Ex. 4, ¶¶ 9-13. The trainer contracted by CDOC cannot work with Mr. Mackes in person, and CDOC does not permit her remote access to the Chromebook, making it impossible for her to view his screen or how he is interacting with the machine in order to teach him. *Id*. ¶ 13. Since his training did not begin until September, Mackes fell behind in his courses and was not able to access class materials until mid-October. *Id*. ¶¶ 13-17. Mr. Mackes still does not have accessible electronic textbooks and must ask other prisoners to read for him. *Id*. ¶ 14.

CDOC has failed to provide and update Key Print Materials on the laptops, and blind prisoners have received woefully inadequate training. Mr. Chávez's laptop restricts him from opening PDF files, so he cannot access administrative regulations, CDOC's rules, memoranda, and other Key Print Materials. Ex. 5, ¶¶ 10-11. Mr. Chávez received no training between August 2023 and July 31, 2024, so he was denied any access during that time. *Id*. ¶ 9.

It took CDOC 15 months for Mr. Mackes to gain printer access. *see* Ex. 2B. CDOC Dispute Resolution Resp. (Apr. 27, 2023) at 2; Ex. 2C. Pls.' Dispute Resolution Letter to CDOC Counsel (Apr. 22, 2024) at 3. Mr. Chávez and Mr. Mackes have scanners, but they are functionally useless, as they cannot use the scanners to transfer printed material to their laptops. Ex. 4, ¶¶ 21-24; Ex. 5, ¶¶ 12-16. Blind prisoners should be able to use the laptops to draft and print letters, legal documents, and communications to CDOC staff and third parties. Blind prisoners should be able to scan printed mail and documents and run them through an optical character recognition program that will turn them into accessible screen-readable text. Without scanner

8

access, blind prisoners lack equal access to their legal, familial, and institutional communications, as well as access to programs and activities.

Blind prisoners still do not have access to regular postings, and interim measures to allow blind prisoners to access printed materials have been ineffective. CDOC provided Mr. Mackes and Mr. Chávez with the daily postings once and never again. Ex. 4, ¶ 28; Ex. 5, ¶ 18. However, these postings were formatted with columns, tables, highlighting, and handwritten additions, rendering it impossible for Mr. Mackes and Mr. Chávez to read them with their assistive technology. *Id*.

In some cases, CDOC has provided blind prisoners with an OCA to access posted materials. The OCAs have proven ineffective. Although the Agreement defines an OCA as having both "a GED or high school diploma" and the ability "to read and write effectively, accurately, and impartially," Ex. 1, ¶ 2.p., some OCAs lack adequate literacy skills. Ex. 4, ¶¶ 29-30. Other OCAs have exhibited apathetic and uncaring attitudes to blind prisoners when asked to read postings and notices, which suggests the OCAs have received inadequate training under Paragraph 15.b. Ex. 5, ¶¶ 40-44. As a result, blind and print-disabled prisoners lack equal access to the materials in CDOC's bulletin board cabinets and other general postings in violation of the Agreement.

CDOC's provision of other assistive devices has also proven unsuccessful. Mr. Mackes has a recorder to complete educational coursework. CDOC, however, initially failed to configure the recorder to allow Mr. Mackes to use most of its functions. *Id*. His inability to access the recorder contributed to him falling behind in his courses. *Id*. ¶ 32. Mr. Mackes currently has intermittent access to his recorder because CDOC staff does not timely resupply him with batteries. *Id*. ¶ 33.

9

Mr. Chávez requested a stopwatch to use during his recreation time. Ex. 5. Chávez Decl. ¶ 19. Instead of ordering him an accessible talking or tactile watch, CDOC gave him a flat kitchen timer, which is inaccessible and useless for counting laps and exercise sets. *Id*. ¶ 20. Further, a CDOC official told Mr. Chávez in April 2024 that he would be required to buy his own talking watch despite the mandate of Paragraph 5.b of the Settlement that one would be provided. *Id*. ¶ 21.

Sighted prisoners have access to law libraries to conduct legal research. However, the law library computers lack screen-reader software that would allow Plaintiffs access. *Id.* ¶ 23-24; Ex. 4, ¶ 56. Even though Plaintiffs, Plaintiffs' counsel, and CDOC's assistive technology trainer told CDOC staff that Dragon Naturally Speaking, the dictation software on the law library computers, was not a screen reader, CDOC's ADA Coordinator continued to insist that Plaintiffs use this software. Ex. 4, ¶ 56; Ex. 5, ¶¶ 24-26; Ex. 3, ¶ 14; Ex. 2L Pls.' Letter to CDOC Counsel (Sept. 17, 2024).

CDOC recently issued tablets to all prisoners, but they are not fully accessible to blind prisoners. Ex. 4, ¶ 34; Ex. 5, ¶ 27. The tablets run an Android operating system with a screen reader that does not allow full access to the device's features and apps. Ex. 4, ¶¶ 35-37; Ex. 5, ¶¶ 28-29. In addition, the keyboards provided are not configured for blind prisoners to use effectively. Ex. 4, ¶ 39; Ex. 5, ¶ 33. Plaintiffs have requested training on the tablets, but neither has received it. Ex. 4., ¶ 38; Ex. 5, ¶ 34.

Additionally, blind prisoners within CDOC have the same limited access to books today that they had when the litigation started, notwithstanding the Agreement's requirement that they have access similar to sighted prisoners. Ex. 4, ¶¶ 53-55; Ex, 5, ¶¶ 35-39. CDOC still only provides access to the Colorado Talking Book Library, which

was the case before this suit. Plaintiffs' Counsel have provided CDOC several options for offering accessible books to blind prisoners. Ex. 3, ¶ 12. Despite the minimal work and cost of these suggestions, CDOC has taken no steps to provide blind prisoners access to books. *Id*. ¶13; Ex. 5, ¶ 37-38. Further, even when prisoners ask if their families can buy them accessible books, CDOC staff refuses. Ex. 4, ¶ 55; Ex. 5, ¶ 39. Sighted prisoners may receive books from friends and family if ordered directly from an "approved source" such as a publisher or retailer, AR 330-38, ¶¶ II(A), IV(C)(7)(b)(1).[2]

The Agreement requires CDOC to give priority to blind prisoners so they can navigate to and from meals and activities safely. Ex. 1, ¶ 13.b. While this occurred for a time, Mr. Mackes has stopped receiving priority at mealtimes. Ex. 4, ¶¶ 40-42, 47. Diabetic prisoners are permitted priority access to meals, and Mr. Mackes requested to join that group. *Id*. ¶¶ 41-42. CDOC staff refused this request, stating that he may walk with the first non-medical group called to meals. *Id*. ¶ 48. However, Mr. Mackes is never told which group will be called first or where that group will be congregating, so he cannot enter with enough time to find a seat before crowds of prisoners fill the confines of the dining hall. *Id*. ¶ 49. Mr. Mackes required medical treatment twice because he was injured while searching for a seat in the dining hall. *Id*. ¶ 45. CDOC staff told both Mr. Mackes and Mr. Chávez that print lists of their accommodations would be required for them to receive priority access for meals. Ex. 4, ¶¶ 47-48; Ex. 5 ¶ 48. However, Mr. Mackes requested a print accommodations list and never received it, and Mr. Chávez acquired his list but was told his accommodations could not be verified. *Id*. Mr. Chávez has also been denied priority access to meals. Ex. 5, ¶¶ 47-49. He risks injury when

---

[2] https://drive.google.com/file/d/1pc4XM1kBW0O40qjXmUZiQx2oAo3FwSoO/view.

navigating to meals without priority or assistance. *Id.* ¶¶ 49-50.

Mr. Mackes has also been denied priority access to recreation, which makes it impossible for him to access the equipment. Ex. 4. Mackes Decl. ¶¶ 50-52. Mr. Chávez has also been denied accessible materials for prison programming. Ex. 5, ¶¶ 51-52.

Finally, the agreement states that CDOC must evaluate and accommodate prisoners at intake and upon request. Ex. 1, ¶ 3.a. Plaintiffs' Counsel has requested that CDOC evaluate a short list of prisoners who may need accommodations due to blindness. Ex. 2I. Hill Email to CDOC Counsel (July 16, 2024). CDOC has declined to inform Plaintiffs' Counsel whether it has evaluated these individuals or provided them with accommodations. Ex. 2K. Barrett Email to Pls.' Counsel (Aug. 2, 2024).

Over two years after the Agreement's execution, blind prisoners are not much better off than they were when the Complaint was filed. The chart attached as Exhibit 6 summarizes the requirements of the Agreement and CDOC's violations. Judicial enforcement of the Agreement is the only remaining option.

## ARGUMENT

I.    **Legal standards.**

This Court has jurisdiction to enforce the Agreement. The Court incorporated its terms and conditions into an order and retained jurisdiction to enforce it. Dismissal Order at 1. District courts "retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement." *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). A breach of a settlement constitutes a violation of the order, which vests the court with "ancillary jurisdiction to enforce the agreement." *Kendall State Bank v. Archway Ins. Servs., LLC*, Civ. No. 10-2617-KHV, 2015 WL 12733382, at *3 (D. Kan. June 23, 2015) (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

"A settlement agreement is a contract which will be construed using ordinary principles of contract interpretation." *Carlson v. Colo. Center for Reproductive Med., LLC*, No. 21-cv-01528-RMR-MEH, 2022 WL 18777081, at *2 (D. Colo., Dec. 21, 2022) (citing *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993)). "To prove breach of contract under Colorado law, a plaintiff must establish (1) the existence of a contract, (2) performance of the contract by the plaintiff, (3) breach of a material term of the contract by the defendant, and (4) resulting damages. *Interstate Restoration, LLC v. Zurich Am. Ins. Co.*, No. 21-CV-01380-NYW-JPO, 2024 WL 943356, at *13 (D. Colo. Mar. 5, 2024) (citing *Dorsey & Whitney LLP v. RegScan, Inc.*, 488 P.3d 324, 334 (Colo. App. 2018)). A "material" contract term under Colorado law is a term that "goes to the root of the matter or essence of the contract" and "must be assessed in the context of the expectations of the parties at the time the contract was formed." *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 43 (Colo. App. 2022) (citation omitted). "Whether there has been a material breach" of a settlement agreement "turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance." *Id.* (citation omitted).

The language of the Agreement makes clear that CDOC is in material breach of its terms. Its first paragraph sets forth the "Goal: That Blind Prisoners will have private and independent access to information, processes, programs, and facilities available to sighted Prisoners on an equal basis with sighted prisoners, consistent with legitimate security concerns." Ex. 1, ¶ 1; *see also generally id.* ¶ 3 ("Ensuring Equal Access").

In addition, the Agreement specifies that, "[i]n resolving [a] dispute, the Court will

13

apply the standards of Title II and Section 504." *Id*. ¶ 17(b)(ii). The ADA prohibits CDOC from denying prisoners the opportunity to participate in or benefit from its programs, services, and activities, affording them unequal access to opportunities afforded others, and otherwise limiting them in the enjoyment of any opportunity enjoyed by others. 28 C.F.R. § 35.130(b)(1)(i), (ii), (vii). The ADA specifically requires CDOC to ensure that communications with blind people "are as effective as communications with others," 28 C.F.R. § 35.160(a)(1), and to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity," *id*. § 35.160(b)(1). In deciding what types of auxiliary aids and services are necessary, CDOC must "give primary consideration to the requests of individuals with disabilities." *Id*. § 35.160(b)(2). "Primary consideration" means CDOC must honor the request unless it can demonstrate that another equally effective means of communication is available, or that the requested means would cause a fundamental alteration or undue financial and administrative burdens. U.S. Dep't of Justice, Americans with Disabilities Act Title II Tech. Assist. Manual, § II-7.1100 (1993) (https://archive.ada.gov/taman2.html#II-7.1100).

II. **CDOC is in breach of the Agreement and Title II and Section 504.**

The violations described above establish that CDOC is in material breach of the Agreement and of the ADA and Section 504. Blind prisoners do not have functional laptops with Key Print Materials and bulletin board materials; nor do they have scanners that permit them to read and draft documents independently. They do not have access to useable tablets or the range of books available to sighted prisoners. Both Plaintiffs have been denied educational opportunities and accessible class materials. And blind prisoners lack training to use the limited technology they have been provided.

**III.   None of the remedies Plaintiffs seek would constitute a fundamental alteration, undue burden, or threat to security.**

CDOC is excused from performance only where a measure required by the Agreement or requested by a blind prisoner would result in "a fundamental alteration, undue burden, or threat to security." Ex. 1, ¶ 14.a. At no time during the meet and confer process did CDOC express that any portion of the Agreement would be a fundamental alteration, undue burden, or threat to security. Ex. 2, ¶ 26; Ex. 3, ¶ 17. In any event, CDOC has never provided the required written documentation to NFBCO and the requesting prisoner. Ex. 1, ¶ 14.a.

**IV.   Blind prisoners should not have to pay the price for CDOC's delay, and this Court should order compliance with the Agreement.**

Plaintiffs ask the Court to exercise its enforcement power by ordering CDOC to comply with the Agreement, specifying that continued noncompliance may result in contempt. *See Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (a judicial order "compelling obedience" with a settlement is sufficient to render the settlement "enforceable through contempt" (citations omitted)). Plaintiffs also ask the Court to appoint a third-party monitor, at CDOC's expense, to ensure CDOC proceeds apace. Finally, the Agreement provides that, should Plaintiffs prevail, they are entitled to their attorneys' fees and costs. Ex. 1 ¶ 17.b.iii (incorporating by reference 42 U.S.C. § 12205).  Plaintiffs respectfully request the opportunity to file a fee petition should the Court rule in their favor.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court exercise its power to order CDOC to comply with the Agreement, install a third-party monitor to ensure compliance, and award Plaintiffs attorneys' fees.

                                            BROWN, GOLDSTEIN & LEVY, LLP

                                            _____*/s/ Eve L. Hill*_____

                                            Eve L. Hill
                                            120 Baltimore Street, Suite 2500
                                            Baltimore, Maryland 21202
                                            410-962-1030
                                            ehill@browngold.com

                                            FOX & ROBERTSON, PC
                                            Amy F. Robertson
                                            1 Broadway, Suite B205
                                            Denver, CO 80203
                                            303-951-4164
                                            arob@foxrob.com

Dated: November 27, 2024                *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals at the following email addresses:

Phillip Barrett
Philip.Barrett@coag.gov

Rachel Lieb
Rachel.Lieb@coag.gov

_____
Denise M. Altobelli
Paralegal Manager
Brown, Goldstein & Levy, LLP

17